Present:  All the Justices

BROOKS & COMPANY
GENERAL CONTRACTORS, INC.

                                          OPINION BY
v.  Record No. 980953      CHIEF JUSTICE HARRY L. CARRICO
                                       February 26, 1999

RANDY ROBINSON
CONTRACTING, INC.

            FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
                    Melvin R. Hughes, Jr., Judge

    This building construction case involves a controversy

between Brooks & Company General Contractors, Inc. (Brooks)

and Randy Robinson Contracting, Inc. (Robinson) over

whether the agreement between them included a requirement

that disputes should be submitted to arbitration.  When a

dispute arose and Brooks demanded arbitration, Robinson

moved the trial court for a stay pursuant to Code § 8.01-

581.02(B).[1]  From an order staying arbitration permanently,

we awarded Brooks this appeal.

    The controversy relates to the construction of the

Swift Creek Presbyterian Church in Chesterfield County.  In

October 1995, Brooks was in the process of submitting a bid

to become the general contractor on the project and Randy

_____

[1] Code § 8.01-581.02(B) provides, in pertinent part, that
"[o]n application, the court may stay an arbitration
proceeding commenced or threatened on a showing that there
is no agreement to arbitrate."

Robinson Contracting submitted a written bid to Brooks in hopes of becoming the sitework subcontractor.[2]

Because the owner was not prepared to begin construction immediately, commencement of the project was delayed until the spring of 1996. In May of that year, after Brooks was selected as the general contractor, it contacted Robinson to ascertain whether Robinson's October 1995 bid was still good. When Robinson indicated that the bid was still good, Brooks' representative, Rick Griffith, advised Robinson that it would be given the work. Griffith marked on his copy of Robinson's bid document: "$ confirmed by Randy Robinson 5/17/96." Griffith testified below that he told Randy Robinson a written contract would be sent to Robinson. However, Randy Robinson testified that he did not recall such a statement.

Two weeks later, Brooks sent Robinson an American Institute of Architects (AIA) "Standard Form of Agreement Between Contractor and Subcontractor." The form contained numerous terms not found in Robinson's bid documents and not previously discussed by the parties, including a clause requiring arbitration of disputes.

---

[2]At the time this bid was submitted in October 1995, Randy Robinson apparently operated as a sole proprietorship under the name of Randy Robinson Contracting but incorporated as Randy Robinson Contracting, Inc. in March 1996.

Brooks had not executed the AIA form contract. Griffith testified that Brooks did not execute contract documents before mailing them to subcontractors because of the possibility that subcontractors might mark changes on the documents.

Robinson received the AIA form contract but did not sign it or return it to Brooks. Randy Robinson testified that he did not agree with the AIA form contract and that his refusal to sign was purposeful, although he did not communicate his disagreement to Brooks. Griffith testified that Randy Robinson promised several times to sign the AIA form contract and that once, at the beginning of Robinson's work, he, Griffith, went to the job site to get a signed copy of the AIA form contract and Randy Robinson stated he had left his copy at home. In his testimony, Randy Robinson denied making these statements.

Robinson began work on the project on June 26, 1996, and continued working until July 15, 1996. On the latter date, Randy Robinson used a front-end loader to demolish Brooks' job-site trailer and then left the site. Robinson performed no further work on the project.

Brooks completed the work Robinson left unfinished and, citing the arbitration clause in the AIA form contract, filed a demand with the American Arbitration

3

Association for arbitration and for an award of damages for Robinson's failure to complete the work. Robinson then filed its motion to stay arbitration, denying that the AIA form contract represented any portion of the agreement between the parties. Brooks argued in response that the AIA form contract set forth the terms of the agreement between the parties and that Robinson had accepted those terms by performance. After hearing the testimony of Rick Griffith and Randy Robinson, the trial court found that "there was never a meeting of the minds as contained in the AIA form contract and the parties are not bound by it." The court then ordered a permanent stay of arbitration.

On appeal, Brooks stakes its case on the proposition that Robinson accepted the terms of the AIA form contract by performance. Brooks acknowledges that the "question in any case in which a contract is asserted by one party and denied by the other is whether there has been a meeting of the minds." However, Brooks asserts that the determination whether there has been a meeting of the minds always depends upon the intention of the parties "as objectively manifested." See Snyder-Falkinham v. Stockburger, 249 Va. 376, 381, 457 S.E.2d 36, 39 (1995); Montagna v. Holiday Inns, Inc., 221 Va. 336, 346, 269 S.E.2d 838, 844 (1980). Here, Brooks says, "not only was there no objective

4

manifestation of disagreement, but to the contrary, [Randy] Robinson actually began the work after having received the contract without indicating in any way that he disagreed with the written contract documents."

Nor does it make any difference, Brooks maintains, that Robinson "did not sign the contract documents." Brooks states that "[w]hen a party undertakes the performance of a contract according to its terms, acceptance by performance results, even if the party failed to sign the final contract."

Robinson argues, on the other hand, that the doctrine of acceptance by performance is inapplicable here because the sole agreement between the parties consisted of an oral contract entered into prior to the delivery of the AIA form contract by Brooks to Robinson. The oral contract arose, Robinson maintains, when Brooks contacted Robinson in May of 1996 to inquire if the October 1995 bid was still good, Robinson answered in the affirmative, and Brooks advised that Robinson would be given the work. And its "performance on the project," Robinson insists, "was completely in accordance with the terms of that parol contract."

In support of its argument that Robinson accepted the terms of the AIA form contract by performance, Brooks cites

<u>Galloway Corp. v. S.B. Ballard Construction Co.</u>, 250 Va. 493, 464 S.E.2d 349 (1995). <u>Galloway</u> involved a dispute between a general contractor and several of its subcontractors, including Empire Granite Corporation (Empire). The president of Empire, through apparent oversight, had failed to sign the final contract documents as proposed by the general contractor. We held that, "[a]s Empire undertook to perform the contract according to its terms, an acceptance by performance resulted. The absence of an authorized signature does not defeat the existence of the contract . . . ." 250 Va. at 505, 464 S.E.2d at 356.

In <u>Galloway</u>, however, the final contract documents, although not signed by Empire, had been signed by the general contractor, objectively manifesting its intention to be bound by the documents, and this was the contract we said Empire had accepted by performance. Here, no objective manifestation of Brooks' intention appears. Brooks did not sign the AIA form contract it sent to Robinson, and Griffith, Brooks' representative, testified this was the firm's practice because it expected subcontractors to make changes in the documents.

Furthermore, there was no issue in <u>Galloway</u> concerning whether Empire had performed pursuant to a preexisting parol contract rather than the written document it had

6

failed to sign. Here, Robinson makes the preexisting parol contract the pivotal element in the case, saying it was the sole agreement between the parties and the one under which it performed.

During oral argument, Brooks conceded there was "an oral contract" between the parties but stated Brooks "indicated by sending this written document that the intention was to replace the oral contract with a written contract." Brooks also conceded that Robinson was under no duty to reject the modifications contained in the AIA form contract, but maintained that because Robinson started work "without objection, . . . that's acceptance by performance."

We disagree with Brooks. While Brooks may have intended that the AIA form contract would replace the oral contract, there is nothing in the record indicating that Brooks ever conveyed that intention to Robinson or that Robinson shared the intention. A form letter of transmittal accompanying the AIA form contract was checked only in a box labeled "[f]or approval." And although Rick Griffith testified that Randy Robinson promised to sign the AIA form contract, Randy Robinson contradicted Griffith's testimony, and the trial court resolved the conflict in

7

Robinson's favor when it awarded Robinson a stay of arbitration.

This case reduces itself, therefore, to the proposition that a valid and binding oral contract existed between the parties after Robinson said it stood by its October 1995 bid and Brooks said Robinson would be given the work, that Brooks simply failed to show there was a meeting of the minds on the modifications that later appeared in the AIA form contract, and that, without such a showing, it cannot be said that Robinson accepted the terms of the modified contract by performance. Hence, as Robinson maintains, the oral contract was the sole subsisting agreement between the parties, and it did not require arbitration in the event of a dispute.

For these reasons, we will affirm the trial court's permanent stay of arbitration.

Affirmed.