Present:  All the Justices

SIDNEY E. PHILLIPS

v.  Record No. 061183  OPINION BY JUSTICE CYNTHIA D. KINSER
                                      April 20, 2007
SIMONA MAZYCK

FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
R. Terrence Ney, Judge


This appeal arises out of the circuit court's judgment sustaining a plea in bar and ordering the parties to arbitrate the plaintiff's personal injury claim.  Because the record fails to establish that the parties mutually assented to the terms of a purported arbitration agreement, we will reverse the judgment of the circuit court and remand the case for a trial on the merits.

Sidney E. Phillips filed a motion for judgment against Simona Mazyck, seeking damages for personal injuries he allegedly sustained in an automobile accident involving Mazyck.  In response, Mazyck filed a plea in bar, requesting a dismissal of Phillips' motion for judgment.  Mazyck asserted that Phillips, before filing his motion for judgment, had entered into an agreement with Mazyck's automobile liability insurance carrier, United Services Automobile Association (USAA), to arbitrate Phillips' personal injury claim.  Mazyck argued that this agreement to arbitrate constituted an accord and satisfaction and/or

a settlement of Phillips' claim that barred Phillips from pursing the action he filed in the circuit court. Mazyck further alleged that Phillips improperly and unilaterally withdrew from the arbitration agreement. As an alternative to the relief sought in her plea in bar, Mazyck subsequently moved the circuit court to stay the proceedings and compel the parties to proceed to arbitration pursuant to Code § 8.01-581.02.

Prior to a hearing on Mazyck's plea in bar, Mazyck deposed Phillips' attorney, Donald W. Marcari, regarding the events leading up to the alleged formation of the agreement to arbitrate Phillips' personal injury claim.[1] Marcari indicated that, because he had been unable to reach an amicable settlement of Phillips' claim with USAA's senior casualty examiner, Terry W. Wier, he sent Wier a letter dated March 6, 2003, inquiring whether USAA would be willing to enter into binding arbitration with a "high-low" provision valuing Phillips' damages between $12,000 and $45,000.

According to Marcari, negotiations continued with regard to the details of an arbitration agreement and the "high-low" range. Wier then replied in a letter dated May

16, 2003, stating USAA would agree to binding arbitration with a "high of $32,500 and a low of $7,500." Wier indicated in his letter, however, that arbitration would be "subject to liability and damages [d]iscovery by [USAA's] attorney," and he pointed out that the parties needed to agree on a location where the arbitration would take place. Marcari testified that, at the time, he was "agreeable" to USAA deposing Phillips in conjunction with the proposed arbitration.

Marcari subsequently received a letter from USAA's attorney, Terry H. Davis, Jr., in which Davis stated his understanding that Marcari and Wier had agreed on a "high-low" provision and asked Marcari to call him regarding additional discovery. Marcari testified that, at the time he received Davis' letter, he had agreed with Wier that they would employ the services of Arbitration Associates, Inc., but that they had not resolved who would serve as the arbitrator.

In a subsequent letter, Davis reminded Marcari that the parties still needed to select an arbitrator and enclosed USAA's interrogatories and requests for production. Davis also requested that Phillips undergo an

---

[1] At the hearing on the plea in bar, the circuit court considered Marcari's deposition in addition to letters and

independent medical examination (IME).  According to Marcari, that request was the first time anyone had mentioned an IME, but he had no objection to it.  Marcari did not recall any discussions suggesting the arbitration would be contingent on the results of either the discovery or the IME.  The parties subsequently agreed on an individual to serve as the arbitrator.

Marcari and Davis then received a letter dated June 23, 2003 from Debbie Dickerson-Nussbaum (Nussbaum), president of Arbitration Associates, Inc., along with a document titled "Arbitration Agreement."  The letter read:

> Dear Gentlemen:
>
> Enclosed you will find the arbitration agreement for the above referenced case; all parties will receive a copy by facsimile.  The original will be mailed to Don.  Don, please sign same and forward to Terry as soon as possible.
>
> Arbitration Associates, Inc. must receive the fully executed original no later than August 6, 2003.

According to his deposition testimony, Marcari changed the date specified in the agreement for the submission of evidence to the arbitrator and added the names of witnesses.  In a letter dated June 25, 2003, Davis advised Marcari that he wanted to change certain terms of the proposed arbitration agreement.  Although Marcari signed

documents that were deposition exhibits.

4

the arbitration agreement, he never forwarded it to either Davis or Nussbaum. Marcari stated that he chose not to do so because he first wanted to obtain the results of the IME. Marcari admitted, however, that he never communicated that fact to anyone else.

Marcari subsequently received a "Revised Arbitration Agreement" dated August 8, 2003. As before, Marcari signed the agreement, this time without making any changes in its terms, but again, he did not send it to Davis because he was still waiting to receive the results of Phillips' IME. Marcari acknowledged, however, that he never requested any amendment to the Revised Arbitration Agreement to reflect that arbitration would be contingent upon the results of the IME. He also agreed that, other than the names of some witnesses that were not listed, the Revised Arbitration Agreement included the terms he had discussed with Davis and Wier.

Sometime after receiving the Revised Arbitration Agreement, Marcari learned that the doctor who performed Phillips' IME reported that Phillips would require surgery. According to Marcari, he then communicated to Davis that, because Phillips' injuries were more severe than the parties had originally understood, Phillips was unwilling to proceed with the arbitration. By a letter dated October

14, 2003, Davis told Marcari, "Please be advised that we do protest the unilateral cancellation of the arbitration hearing on September 30th. It is our position that the arbitration agreement is binding."

At the hearing on Mazyck's plea in bar, the circuit court framed the issue as whether the absence of Davis' signature on the arbitration agreement rendered it unenforceable. Phillips, however, argued, among other things, that there was never a meeting of the minds and thus, the parties never reached an agreement. The circuit court disagreed and ruled that the parties had an enforceable agreement to arbitrate. Continuing, the court found that the agreement was in writing as required by Code § 8.01-581.01,[2] that it included all the essential terms, and that, under Code § 8.01-581.01, the agreement did not need to be signed by all the parties, especially since the attorney for the party to be charged in this case had signed it. The circuit court thus sustained Mazyck's plea in bar and stayed the proceeding pending the outcome of

---

[2] In relevant part, Code § 8.01-581.01 provides:

A written agreement to submit any existing controversy to arbitration or a provision in a written contract to submit to arbitration any controversy thereafter arising between the parties is valid, enforceable and irrevocable, except upon such grounds as exist at law or in equity for the revocation of any contract.

6

arbitration.  After the parties completed arbitration, the circuit court entered a final order dismissing Phillips' motion for judgment with prejudice.  We awarded Phillips this appeal.

Phillips assigns two errors to the circuit court's judgment.  First, he challenges the court's finding that the Revised Arbitration Agreement satisfied the requirements of "[a] written agreement" to arbitrate pursuant to Code § 8.01-581.01 even though the document was never signed by both parties.  Second, Phillips asserts that the circuit court erred in binding him to the terms of the Revised Arbitration Agreement because the parties never reached a meeting of the minds as to its material terms.

Mazyck, on the other hand, argues that the Revised Arbitration Agreement reduced to writing all material terms of the agreement between USAA and Phillips to arbitrate his personal injury claim, and therefore, it satisfied the requirements of Code § 8.01-581.01.  She further asserts that, while neither party's signature was required in order for the agreement to be enforceable, Marcari's signing the Revised Arbitration Agreement demonstrated that Phillips, the party to be charged in this case, assented to its terms.

We have held, both before and after the General Assembly's enactment of the Uniform Arbitration Act, 1986 Acts ch. 614, that " 'the initial duty to arbitrate . . . arises from contractual undertakings.' " Weitz v. Hudson, 262 Va. 224, 228, 546 S.E.2d 732, 734 (2001) (quoting Doyle & Russell, Inc. v. Roanoke Hosp. Ass'n, 213 Va. 489, 494, 193 S.E.2d 662, 666 (1973)); see also Arrants v. Buck, 130 F.3d 636, 640 (4th Cir. 1997) ("Courts decide whether there is an agreement to arbitrate according to common law principles of contract law); Meshel v. Ohev Sholom Talmud Torah, 869 A.2d 343, 354 (D.C. 2005) ("[W]hether the parties have an enforceable agreement to arbitrate . . . is governed by traditional principles of contract law."); Routh v. Snap-On Tools Corp., 423 S.E.2d 791, 794 (N.C. Ct. App. 1992) ("The law of contracts governs the issue of whether there exists an agreement to arbitrate."). Consequently, whether there existed between the parties an enforceable agreement to arbitrate Phillips' personal injury claim depends on whether the Revised Arbitration Agreement contained the essential elements of a valid contract at common law.[3]

---

[3]  Since the Revised Arbitration Agreement was in writing, it satisfied the statutory requirement of "[a] written agreement."  Code § 8.01-581.01.

The material facts concerning the formation of the parties' proposed arbitration agreement are not in dispute. Thus, "the issue of contract vel non is a question of law." Valjar, Inc. v. Maritime Terminals, Inc., 220 Va. 1015, 1018, 265 S.E.2d 734, 736 (1980) (citing Mullins v. Mingo Lime & Lumber Co., 176 Va. 44, 48, 10 S.E.2d 492, 493 (1940)). We decide questions of law de novo. Harrell v. Harrell, 272 Va. 652, 656, 636 S.E.2d 391, 393 (2006) (citing Westgate at Williamsburg Condo. Ass'n v. Philip Richardson Co., 270 Va. 566, 574, 621 S.E.2d 114, 118 (2005)).

" 'It is elementary that mutuality of assent – the meeting of the minds of the parties – is an essential element of all contracts.' " Lacey v. Cardwell, 216 Va. 212, 223, 217 S.E.2d 835, 843 (1975) (quoting Green's Ex'rs v. Smith, 146 Va. 442, 452, 131 S.E. 846, 848 (1926)). "Until the parties have a distinct intention common to both and without doubt or difference, there is a lack of mutual assent and, therefore, no contract." Persinger & Co. v. Larrowe, 252 Va. 404, 408, 477 S.E.2d 506, 509 (1996) (citing Progressive Constr. Co. v. Thumm, 209 Va. 24, 30, 161 S.E.2d 687, 691 (1968)); see also Valjar, 220 Va. at 1018, 265 S.E.2d at 736–37 ("A contract cannot exist if the parties never mutually assented to terms proposed by

either."); Chittum v. Potter, 216 Va. 463, 467, 219 S.E.2d 859, 863 (1975) ("It is crucial to a determination that a contract exists . . . that the minds of the parties have met on every material phase of the alleged agreement."); Routh, 423 S.E.2d at 794 (to support a finding that a valid contract to arbitrate exists, "the party seeking arbitration must show that the parties mutually agreed to arbitrate their disputes"). We ascertain whether a party assented to the terms of a contract from that party's words or acts, not from his or her unexpressed state of mind. Wells v. Weston, 229 Va. 72, 78, 326 S.E.2d 672, 676 (1985); see also Lucy v. Zehmer, 196 Va. 493, 503, 84 S.E.2d 516, 522 (1954) ("The law . . . judges of an agreement between two persons exclusively from those expressions of their intentions which are communicated between them.") (citation and internal quotation marks omitted) (emphasis added).

Our decision in Brooks & Co. General Contractors, Inc. v. Randy Robinson Contracting, Inc., 257 Va. 240, 513 S.E.2d 858 (1999), illustrates these principles. In that case, a general contractor sent to a subcontractor an unsigned form contract containing an arbitration provision that the parties had not previously discussed and that was not included in the subcontractor's bid documents. Id. at

10

242, 244, 513 S.E.2d at 858, 860.  The subcontractor testified that he did not agree with the terms of the form contract and that he purposefully refused to sign it, although he never communicated his disagreement to the contractor.  Id. at 242–43, 513 S.E.2d at 859.  The subcontractor began work on the project that the general contractor had awarded to it, but the subcontractor left the work unfinished.  Id. at 243, 513 S.E.2d at 859.  The general contractor completed the unfinished work and demanded arbitration of its claim for damages against the subcontractor.  Id. at 243, 513 S.E.2d at 859.  On the subcontractor's motion, the trial court entered an order permanently staying arbitration.  Id.  The trial court found that there was no meeting of the minds between the parties as to the terms of the form contract, which neither party signed.  Id.

On appeal to this Court, the general contractor argued that the subcontractor accepted the terms of the form contract by virtue of its commencement of work on the project.  Id.  The general contractor further asserted that the subcontractor's failure to objectively manifest any disagreement on its part with the terms of the form contract demonstrated the subcontractor's assent to those terms.  Id.  We rejected the general contractor's argument

11

and upheld the trial court's finding that the parties did not mutually assent to a modification of their original oral contract.  Id. at 245, 513 S.E.2d at 860.  In doing so, we noted the lack of any evidence that the general contractor, i.e., the party seeking enforcement of the purported contract, objectively manifested its intention to be bound by the form contract.  Id. at 244, 513 S.E.2d at 860.  In fact, the evidence showed that the general contractor did not sign the form contract before sending it to the subcontractor precisely because it expected that the subcontractor would make changes to the document.  Id.

Our search of the record in this case reveals no words or acts on the part of USAA objectively manifesting its assent to the terms of the Revised Arbitration Agreement. Before Nussbaum forwarded the original agreement to Marcari and Davis, USAA's senior casualty examiner, Wier, stated in a letter to Marcari that the arbitration was "subject to liability and damages [d]iscovery by [USAA's] attorney." Neither the original nor the revised agreement included this provision.  Also absent from the record is any indication whether USAA continued to insist on that contingency.  After Nussbaum sent the original agreement, Davis advised Marcari that he could not agree to certain provisions setting dates for disclosing new witnesses and

12

submitting evidence to the arbitrator. Although new disclosure and submission deadlines appeared in the Revised Arbitration Agreement, nothing in the record demonstrates USAA's assent to the new dates.

At oral argument before this Court, Mazyck suggested that Davis' silence after the transmission of the Revised Arbitration Agreement indicated USAA's assent to its terms. A party's silence, however, is insufficient to show its intention to be bound by the terms of a contract. See Wells, 229 Va. at 78, 326 S.E.2d at 676. While Davis advised Marcari in a letter that USAA viewed the agreement as binding, that letter was dated October 14, 2003, well after Phillips' alleged breach. Thus, we conclude that USAA, like the general contractor in Brooks, did not objectively manifest its intention to be bound by the Revised Arbitration Agreement.

Furthermore, under the facts of this case, we conclude that Marcari's failure to comply with Nussbaum's instruction to forward the signed agreement to Davis manifested Phillips' lack of assent. It is true that Marcari never communicated to either Davis or Wier his desire to wait on the results of Phillips' IME before proceeding with arbitration. Nevertheless, Marcari's retention of both the original and the revised agreement,

13

even though he signed each document, is not inconsequential in light of the specific instructions from Nussbaum directing him to sign the document and send it to Davis.

Thus, we hold that, because the record does not disclose the mutual assent of Phillips and USAA to the terms of the Revised Arbitration Agreement, the parties did not have an enforceable written agreement to arbitrate Phillips' personal injury claim. The circuit court erred in finding otherwise and requiring Phillips to arbitrate his claim in lieu of pursuing it in the circuit court. Accordingly, we will reverse the judgment of the circuit court and remand the case for a trial on the merits.

<u>Reversed and remanded</u>.

14