## CIRCUIT COURT OF FAIRFAX COUNTY

Timothy J. Hassett

v.

WaveCrest Laboratories, L.L.C.

March 17, 2008

Case No. CL 2007-10915

BY JUDGE STANLEY P. KLEIN

On September 7, 2007, Timothy Hassett filed a Petition to Vacate Arbitration Award with this Court, seeking to nullify the arbitration award reached in a dispute based on Hassett's alleged employment agreement with WaveCrest Laboratories, L.L.C. ("WaveCrest"). In response, on October 19, 2007, WaveCrest filed a Cross-Motion to Confirm the Arbitration Award. On January 3, 2008, a hearing was held on both motions. The Court has now fully considered the pleadings, the briefs submitted by the parties, and the arguments of counsel. For the reasons set out below, Hassett's Petition to Vacate Arbitration Award is hereby denied, and WaveCrest's Motion to Confirm the Arbitration Award is granted.

### I. Background

On June 20, 2003, WaveCrest offered Hassett the position of Vice President of its Motors Group, which Hassett subsequently accepted on July 25, 2003. Pl's Memo. in Opposition to Def's Motion to Confirm, Ex. A ("Letter Offer"). In August 2003, WaveCrest officially hired Hassett. Pl's Pet. to Vacate Arbitration Award ("Pl's Pet"), ¶ 1. As a condition of hiring

Hassett, WaveCrest required that the parties enter into an Employment and Non Competition Agreement ("the Employment Agreement"). It is undisputed that, on August 31, 2003, WaveCrest executed the last page attached to the Employment Agreement, which is entitled "Option Grant Notice." The Option Grant Notice embodied the equity incentive program WaveCrest offered to Hassett as a benefit of his employment. It is further undisputed that, on or about September 9, 2003, Hassett signed the Employment Agreement, both on the intended signature page and on the Option Grant Notice page.

In October 2004, as an accommodation to its Vice President Hassett, WaveCrest deposited $1,000,000 in First Service Bank of Missouri as security for a construction loan taken out by Hassett. See Award of Arbitrator, p. 5. Thereafter, on May 27, 2005, Hassett signed a promissory note ("the Note") to WaveCrest in the same amount. The Note would be payable when, *inter alia,* Hassett sold specific properties or terminated his employment with WaveCrest without cause. Hassett made payments on the loan to FirstService Bank until August 2005. No further payments were made thereafter, and FirstService Bank declared a default on the loan and retained the balance of the security deposit, totaling $460,000.00.

Hassett remained employed with WaveCrest until November 15, 2005, when WaveCrest terminated his employment. Pl's Pet, ¶ 2. Subsequently, on November 23, 2005, Hassett filed a lawsuit against WaveCrest in the State of Missouri, alleging that WaveCrest breached the Employment Agreement. See Def's Memo. in Opposition. Ex. 2 (Pl's Complaint filed in the 23rd Judicial Circuit in the State of Missouri, ¶ 1). To support this proposition, Hassett submitted to the Missouri court a copy of the Employment Agreement which utilized the Option Grant Notice page as its signature page because both Joseph Perry, President of WaveCrest, and Hassett had signed it. In December 2005, WaveCrest objected to the filing of the lawsuit based on the mandatory arbitration clause in the Employment Agreement, the validity of which Hassett now challenges here. That provision states in pertinent part that:

> Except to the extent otherwise provided in Section 9(a) of this Agreement with respect to claims for injunctive relief, any claim or dispute arising out of or relating to this Agreement, *any other agreement between [Hassett] and [WaveCrest] or* any of its affiliates, [Hassett's] employment with [WaveCrest], or the termination of such employment, shall be resolved by final and binding arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association and this Agreement.

See Employment Agreement, § 9(b) (emphasis added).

In response to WaveCrest's objection, Hassett voluntarily dismissed his suit against WaveCrest based upon the parties' understanding that, consistent with the terms of the Employment Agreement, WaveCrest would initiate arbitration proceedings to resolve the disputed issues between the parties.

Thereafter, on at least two occasions in January 2006, Hassett's counsel contacted WaveCrest, inquiring as to why no arbitration proceeding had yet been filed. Def's Memo, in Opposition, Ex's 4 & 5. In fact, Hassett went so far as to set a deadline for when WaveCrest had to file an arbitration proceeding in Fairfax County, Virginia, or Hassett would refile his lawsuit in Missouri. *Id.* In response to these inquiries and prior to the deadline Hassett mandated, WaveCrest initiated an arbitration proceeding against Hassett in Fairfax County pursuant to the rules of the American Arbitration Association. Richard E. Dixon was designated as the arbitrator over the dispute. In the arbitration proceeding, WaveCrest alleged that Hassett (1) violated the Employment Agreement by trying to form a separate company prior to his separation from WaveCrest (Pl's Pet., ¶ 3) and (2) was indebted to WaveCrest pursuant to the Note for the $460,000.00 that FirstService Bank retained from WaveCrest's million-dollar deposit after Hassett defaulted on making the necessary payments. On February 10, 2006, Hassett filed a response to WaveCrest's claims in the arbitration proceeding and also filed counterclaims against WaveCrest for severance payments under the Employment Agreement.

Subsequently, on June 15, 2006, Hassett filed a Motion to Dismiss the arbitration proceeding. Contrary to his prior position taken in the Missouri lawsuit, he now argued that the claims were not arbitrable because WaveCrest had not signed the Employment Agreement. On November 21, 2006, Hassett filed an additional motion to dismiss the specific arbitration claim regarding the Promissory Note, arguing that the Note did not contain an arbitration clause. Dixon denied both motions, and the Arbitration Hearing took place on April 30, 2007. Hassett did not appear in person, but counsel for Hassett did appear. Counsel for Hassett stated, however, that he did not intend to participate in the hearing or to call any witnesses. Hassett's counsel instead presented evidence through eight affidavits, including one Hassett had executed. Def's Motion to Confirm, ¶ 5. Dixon closed the hearing on May 15, 2007, and issued a ruling on the merits of the parties' claims on June 6, 2007. *Id.* at ¶¶ 6-8. Dixon awarded WaveCrest $460,000.00 plus interest on the Note claim and $38,580.75 plus interest for breach of the Employment Agreement. Dixon denied Hassett's claims for severance pay and other benefits under the Employment Agreement. Lastly, Dixon ordered that WaveCrest pay 25% of the arbitration fees and Hassett 75%.

On September 7, 2007, Hassett filed the instant Petition to Vacate the Arbitration Award with this Court arguing that the Arbitrator improperly relied on the Employment Agreement because WaveCrest failed to produce evidence that (1) it had in fact executed the Employment Agreement and (2) the Employment Agreement contained all of the final terms intended by the parties. Hassett also asserted that the Note dispute was not properly arbitrable because the Note itself did not contain an arbitration clause.

On October 19, 2007, WaveCrest filed its Cross-Motion to Confirm the Arbitration Award. WaveCrest argues that the arbitration clause in the Employment Agreement is binding on both parties and that, under the Employment Agreement, WaveCrest is entitled to have the arbitration award enforced as a final judgment. Moreover, WaveCrest contends that the Note dispute was properly before the arbitrator because it fell within the scope of the arbitration provision in the Employment Agreement.

## II. *Analysis*

### A. *Enforceability of the Employment Agreement's Arbitration Clause*

Virginia Code § 8.01-581.010 provides the sole and exclusive means for setting aside an arbitration award. *Lackman v. Long & Foster Real Estate, Inc.*, 266 Va. 20, 580 S.E.2d 818 (2003). Indeed, when a court reviews the propriety of an arbitration award it "must be construed liberally so as to uphold it, if possible." *Howerin Residential Sales Corp. v. Century Realty of Tidewater, Inc.*, 235 Va. 174, 179, 365 S.E.2d 767, 770 (1998) (quoting *Sydnor Pump & Well Co. v. County Sch. Bd.*, 182 Va. 156, 167, 28 S.E.2d 33, 37 (1943)). Because of this guiding policy consideration, "the party attacking an arbitrator's award bears the burden of proving the invalidity of the award." *Trustees of Asbury United Methodist Church v. Taylor & Parrish, Inc.*, 249 Va. 144, 153, 452 S.E.2d 847, 852 (1995).

Hassett seeks to vacate the present arbitration award under § 8.01-581.010(5), which states in pertinent part that:

> Upon application of a party, the court shall vacate an award where. . . .
>
> 5. There *was no arbitration agreement* and the issue was not adversely determined in proceedings under § 8.01-581.02 and the party did not participate in the arbitration hearing without raising the objection. . . .

Va. Code § 8.01-581.010(5) (emphasis added). Hassett is correct that under Virginia law, "the initial duty to arbitrate . . . arises from contractual undertakings." *Weitz v. Hudson*, 262 Va. 224, 228, 546 S.E.2d 732, 734 (2001) (internal quotation marks omitted). As a result, the determination of whether an enforceable agreement to arbitrate exists is governed by traditional principles of contract law. *Phillips v. Mazyck*, 273 Va. 630, 635, 643 S.E.2d 172, 175 (2007) (quoting *Arrants v. Buck*, 130 F.3d 636, 640 (4th Cir. 1997)). Thus, the critical contract principle at issue here is whether the Employment Agreement embodies a meeting of the minds between WaveCrest and Hassett, or stated more directly, whether a valid arbitration agreement could arise between Hassett and WaveCrest when the originally intended signature page of the Employment Agreement was not endorsed by all parties.

In Virginia, "[i]t is elementary that mutuality of assent – the meeting of the minds of the parties – is an essential element of all contracts." *Lacey v. Cardwell*, 216 Va. 212, 223, 217 S.E. 2d 835, 843 (1975). The Supreme Court of Virginia has established that, in determining whether there was such a meeting of the minds, "we ascertain whether a party assented to the terms of a contract from that party's words or acts, not from his or her unexpressed state of mind." *Wells v. Weston*, 229 Va. 72, 78, 326 S.E.2d 672, 676 (1985).

The Supreme Court of Virginia appears to have first examined the issue of mutuality of assent in the context of a contract containing an arbitration provision in *Brooks & Co. General Contractors, Inc. v. Randy Robinson Contracting, Inc.*, 257 Va. 240, 513 S.E.2d 858 (1999). In *Brooks*, a general contractor mailed an unsigned form contract to a subcontractor after the parties had made an oral contract regarding the terms and scope of the subcontractor's performance. *Id.* at 242, 513 S.E.2d at 858. The form contract contained an arbitration provision that had not been previously discussed between the parties and that had not been included in the subcontractor's original bid for the job. *Id.* The evidence at trial established that the subcontractor intentionally refused to sign the form contract after the general contractor had mailed it because the subcontractor disagreed with some of its terms. *Id.* at 242-43, 513 S.E.2d at 859. Nevertheless, the subcontractor began work on the project, but left prior to its completion. *Id.* at 243, 513 S.E.2d at 859. The general contractor subsequently sought arbitration under the form contract for the work that he was required to complete after the subcontractor failed to finish the project. *Id.*

The *Brooks* Court held that, even though the subcontractor had (1) commenced work under the form contract and (2) failed to objectively manifest any disagreement with the underlying terms of the form contract, mutuality of assent did not exist between the parties. *Id.* at 245, 513 S.E.2d at

860. The Court upheld the finding of the trial court that there had never been a meeting of the minds to modify the oral contract that the parties had already made. *Id.* In reaching this conclusion, the Court noted that there was a lack of credible evidence to support a finding that the general contractor, the party seeking to enforce the arbitration agreement, had objectively manifested its intention to be bound by the form contract in lieu of the original oral agreement. *Id.* at 244, 513 S.E.2d at 860.

Recently, in *Phillips v. Mazyck*, 273 Va. 630, 643 S.E.2d 172 (2007), the Supreme Court of Virginia again examined this issue in the context of an arbitration case. Once again, the Court found the record devoid of any words or acts on the part of the party seeking to compel arbitration indicating it intended to be bound by the agreement. *Id.* at 637, 643 S.E.2d at 176. To the contrary, the Court found that the party's representative affirmatively chose not to comply with the requirement that he forward the fully executed agreement to the defendant, thereby manifesting a clear intent not to be bound by the terms of the agreement. *Id.* at 638, 643 S.E.2d at 176-77.

Here, unlike the situation in both *Brooks* and *Mazyck*, the evidence establishes that both parties intended to be bound by the Employment Agreement. WaveCrest, the party seeking enforcement of the Employment Agreement and its arbitration provision, manifested its assent to the terms of the Employment Agreement through its actions. First, even though it may have failed to endorse the specific signature page of the Employment Agreement, Joseph Perry, President of WaveCrest signed the Option Grant Notice page, the last page attached to the Employment Agreement, thereby evidencing WaveCrest's intent to be bound. Second, WaveCrest compensated Hassett during the term of his employment as provided by the terms of the contract. Third, WaveCrest enrolled Hassett in its equity incentive program, as outlined in the Employment Agreement. Finally, when Hassett filed his lawsuit in Missouri seeking to enforce the Employment Agreement, WaveCrest sought to enforce the arbitration provision in the Employment Agreement in lieu of arguing that it was not bound by its terms. Indeed, at all relevant times WaveCrest interacted with Hassett as if the Employment Agreement was in full force and effect.

Moreover, Hassett also took affirmative steps that demonstrated his intent to be bound by the Employment Agreement. Hassett's decision to file a lawsuit in Missouri based on the same Employment Agreement that he challenges here clearly evidences his belief that a binding contract existed

between the parties, thereby undermining his argument to the contrary.[1] Furthermore, Hassett acknowledges that he signed the Employment Agreement on both the original signature page and on the Option Grant Notice page. Indeed, there appears to be no evidence that Hassett had ever acted in a manner inconsistent with the total viability of the Employment Agreement until he changed his position midstream during the arbitration proceedings.

Together, these facts demonstrate that Hassett and WaveCrest mutually assented to the terms and conditions of employment contained in the Employment Agreement. Thus, under binding Virginia precedent, the Employment Agreement, including the mandatory arbitration clause at issue, constitutes a legally enforceable contract. As a result, this Court holds that § 8.01-581.010(5) does not provide a basis for setting aside the Arbitration Award and denies Hassett's Motion to Vacate on the ground that no arbitration agreement existed between the parties.

## B. *Arbitrability of the Promissory Note Dispute*

Hassett next argues that, even if a binding arbitration agreement existed between the parties, the arbitration award should nonetheless be set aside to the extent it relates to the Note dispute because the Note itself did not contain a mandatory arbitration clause. As a result, according to Hassett, the dispute arising out of the Note was not properly before the arbitrator. It is indeed well-settled under Virginia law that "[a]rbitrators derive their authority solely from the parties' contractual agreement to arbitrate disputes arising under the contract. Thus, arbitrators exceed the scope of their authority when they purport to act beyond the terms of the contract from which they draw their authority." *Trustees of Asbury United Methodist Church v. Taylor & Parrish, Inc.*, 249 Va. 144, 153, 452 S.E.2d 847, 852 (1995).

Hassett is correct that the Note itself does not contain an arbitration provision. However, the parties' dispute arising out of the Note may still have been an arbitrable issue if it fell within the scope of the arbitration provision contained in the Employment Agreement. Except as to claims for injunctive

---

[1] The Court notes that, in the Missouri case, where he was seeking enforcement of his rights pursuant to the Employment Agreement, Hassett apparently presented the court with a copy of solely pages 1-11 of the Agreement and the Option Grant Notice page duly executed by both parties (see Exh. 2 to WaveCrest's Opposition to Petitioner's Petition to Vacate Arbitration Award) but without the intended original signature page signed solely by Hassett.

relief, the arbitration clause in the Employment Agreement required the parties to submit to arbitration "any claim or dispute arising out of or relating to this Agreement, [and] *any other agreement between [Hassett] and [WaveCrest]* or any of its affiliates. . . ." See Employment Agreement, § 9(b) (emphasis added). WaveCrest's posting of the one million dollars and Hassett's subsequent execution of the Note unquestionably arose out of an agreement between Hassett and WaveCrest. Consequently, under the explicit and unambiguous terms from which the arbitrator drew his authority, the Note dispute was arbitrable. The Court, therefore, also denies Hassett's Motion to Vacate the Arbitration Award as to the Note issue.

## C. *Conclusion*

Pursuant to Virginia Code § 8.01-581.010, "[i]f the application to vacate is denied and no motion to modify or correct the award is pending, the court shall confirm the award." As there is no motion to modify or correct the arbitration award pending, the Court grants WaveCrest's Motion to Confirm the Arbitration Award. Accordingly, for each of the reasons set out in this letter opinion, the Court grants WaveCrest's Motion to Confirm the Arbitration Award and denies Hassett's Motion to Vacate the Arbitration Award.

### *Final Order*

This matter came before the Court on the Plaintiff's Motion to Vacate Arbitration Award and the Defendant's Motion to Confirm Arbitration Award. It appearing to the Court for the reasons articulated in the Letter Opinion dated March 17, 2008, that the Motion to Confirm the Arbitration Award should be granted and the Motion to Vacate the Arbitration Award should be denied, it is therefore ordered as follows.

1. The Motion to Confirm the Arbitration Award is granted and the Motion to Vacate the Arbitration Award is denied;

2. Final judgment is entered for the Defendant, WaveCrest Laboratories, L.L.C., and against the Plaintiff, Timothy J. Hassett, in the amount of $460,000,000, together with interest from September 27, 2005, at the rate of 5% per annum, calculated on the basis of a 360 day year comprising 12 months of 30 days;

3. Final judgment is entered for the Defendant, WaveCrest Laboratories, L.L.C., and against the Plaintiff, Timothy J. Hassett, in the amount of $38,580.75, together with interest at the legal rate of 6% per annum from July 6, 2007;

130

4. Plaintiff Timothy J. Hassett shall reimburse WaveCrest Laboratories, L.L.C., the sum of $12,052.69, effective July 6, 2007, representing that portion of the administrative fees and expenses of the American Arbitration Association in excess of the apportioned costs previously incurred by WaveCrest Laboratories, L.L.C.; and that this cause is final and that this matter is stricken from the active docket of this Court.