PRESENT:  All the Justices

TONY JACOB THOMAS

OPINION BY
v.  Record No. 230403                                        JUSTICE THOMAS P. MANN
MAY 30, 2024

COMMONWEALTH OF VIRGINIA


FROM THE COURT OF APPEALS OF VIRGINIA

"Taking pleas" in criminal cases is a routine process in trial courts across the

Commonwealth, requiring trial judges and parties to successfully complete numerous procedural

requirements to ensure constitutional compliance.  The plea process enables parties to negotiate

and then arrive at an independent agreement.  Once that occurs, the parties then ask the court to

ratify the agreement which enables the parties to bring the case to an efficient conclusion.  While

pleas are a commonplace procedure in courtrooms, there are extraordinary consequences if

certain procedures are not properly followed.  This case, while factually exceptional, exemplifies

such consequences.

COVID-19 created a backlog of cases and circuit courts around the Commonwealth

implemented various processes to dispose of uncontested matters expeditiously, when

practicable.  Here, the parties agreed to a new plea agreement after their first plea agreement was

neither accepted nor rejected by the trial court.  When the trial court became aware of this second

plea agreement, it demanded that the first be enforced, despite the parties withdrawing their

assent to the agreement.  Thus, this case raises the question: are parties free to renegotiate plea

agreements that have not been accepted by the court?

We hold that parties are free to modify or renegotiate plea agreements when a trial court

has not yet accepted the agreement.  Because the first plea agreement was never accepted by the

trial court, the trial court's insistence upon and implementation of a plea agreement that the parties had revoked was reversible error.

BACKGROUND

In July 2019, a physical altercation between Tony Thomas and the victim, Eric Smith, resulted in Thomas slashing Smith's face with a flat folding razor knife, resulting in permanent injuries including scarring, nerve damage, numbness in his mouth and tongue, and a slight speech alteration. Thomas was indicted on September 23, 2019, for aggravated malicious wounding.

I. JANUARY HEARING

On January 22, 2020, when trial was set to begin, the parties informed the court that they had reached an agreement. The court released the jury after it agreed it would "take the plea," but indicated it would set a later hearing date for sentencing and "acceptance of the plea." The trial court emphasized that it had not yet reviewed the plea agreement and that "if the court does not accept the agreement and rejects it, [Thomas] will have the right to withdraw his plea." Defense counsel confirmed his understanding of this process.

The Commonwealth provided to the trial court its proffer of facts and the parties' executed plea agreement to a reduced charge of unlawful wounding. Thomas indicated that he would plead no contest to the amended charge. The trial court reviewed the provided documents and informed the parties that it was going to proceed by having Thomas "arraigned to the original charge. The aggravated malicious wounding." Explaining that this was the most efficient process, the trial court then asked for Thomas' plea to the aggravated malicious wounding charge. Defense counsel attempted to interrupt, but the trial court proceeded by asking whether it was Thomas' understanding "that you will be pleading guilty if the Court

2

accepts an agreement" which included an amendment to unlawful wounding. Thomas affirmed, "yes, sir. No contest." The trial court then asked, "So you will be pleading no contest assuming the charge is amended?" Thomas, in response, confirmed.

The trial court then conducted a plea colloquy with Thomas. It found the plea had been made voluntarily and knowingly. However, the trial court withheld its acceptance of the plea and finding of guilt, stating that it would find the facts sufficient but was withholding determination of guilt until after the indictment had been amended. Defense counsel affirmed that he agreed with that process.

The trial court then asked the Commonwealth why it believed the proposed agreement was in the best interests of the Commonwealth. The Commonwealth's Attorney explained that its case relied largely on the victim's recollection of the incident and the testimony of two other witnesses. However, the victim admitted that he was heavily intoxicated throughout the day leading up to the incident, and that he had "black[ed] out" during the actual incident and could not remember the cause of the altercation with Thomas. One other witness was hospitalized at the time due to a lung transplant. The final witness had recently been arrested for a probation violation based on new crimes of moral turpitude. The trial court then set an April 2020 return date for acceptance of the plea and sentencing.

II. INTRODUCTION AND ACCEPTANCE OF SECOND PLEA AGREEMENT

Before the return date, COVID-19 struck. Effectively, court proceedings across the Commonwealth came to a halt, creating cascading delays and other challenges. This Court's emergency orders and the judicial circuit's related procedures resulted in a delay of Thomas' return date to May 18, 2020. During this period, the Commonwealth's case was hindered by additional witness difficulties. As a result, the parties renegotiated and entered into a second

plea agreement allowing Thomas to plead no contest to an amended charge of misdemeanor assault and battery.

The parties asserted that, at some point, the circuit court clerk's office communicated with the local bar requesting any agreed-upon matters be docketed to alleviate the court's backlog due to the pandemic. The parties indicated that it was their understanding that this was at the direct request of a judge designate. Accordingly, the parties docketed a hearing for May 8, 2020, for a plea in accordance with the second plea agreement.

The parties appeared before the judge designate on May 8, and presented the trial court with a motion to request bond pending sentencing and an agreed order reflecting bond. Neither party at the May 8 hearing expressly informed the judge designate of the January proceedings. The bond motion indicated that the first plea was under advisement with a different judge and included an attachment of the January 22 hearing transcript. The judge designate continued the hearing until May 13, as Thomas was inadvertently not transported for the hearing.

On May 13, the parties and Thomas appeared before the judge designate again with the second endorsed plea agreement. The plea provided that Thomas would plead no contest to misdemeanor assault and battery, be sentenced to 12 months in jail with credit for time served, pay restitution, and remain on good behavior. The second plea agreement referenced the first plea agreement but did not recount its procedural history. The Commonwealth moved to amend the indictment of aggravated malicious wounding to assault and battery, which the trial court granted. Thomas waived the reading of the amended indictment and pleaded no contest to

assault and battery. The judge designate accepted Thomas' plea and plea agreement and sentenced him pursuant to the agreement.[1]

### III. MAY 27 HEARING TO VOID SECOND PLEA AGREEMENT

On May 20, 2020, the same judge who had presided over the January hearing entered orders staying the bond and sentencing orders and entered a notice of hearing for May 27, directing the parties to appear and show cause why the bond and sentencing orders should not be vacated.

The parties appeared at the scheduled hearing by telephone, and the judge explained that the trial court had scheduled the hearing "because it came to the court's attention that these matters were heard when the court believed they were under advisement by this court." The judge then requested to know how the matter had been scheduled and heard in what he believed to be a violation of this Court's emergency orders and corresponding orders issued by the Chief Judge of the judicial circuit. Defense counsel explained the communication from the clerk's office and indicated that, because the parties had reached a second plea agreement, defense counsel and the Commonwealth agreed to docket the uncontested plea.

The trial court asked defense counsel about his understanding of the January hearing, and counsel indicated that the trial court had not accepted Thomas' plea or plea agreement. Defense counsel further asserted that, under contract principles, he and the Commonwealth were free to agree to different terms given the change in the case's circumstances. The trial court reiterated the steps it had taken to communicate that the first plea was under advisement, including arraigning Thomas, ordering a presentence report, and scheduling another hearing. The trial

---

[1] The sentencing order from the second plea agreement erroneously stated that the amended charge was "unlawful wounding," but properly cited to Code § 18.2-57 (assault and battery).

court then questioned counsel's judgment on presenting the same matter with a new agreement to the judge designate while the matter was still pending with him.

The Commonwealth supported Thomas' position and corroborated the sequence of events leading to the second plea agreement and sentencing order by the judge designate. It reiterated that it was neither party's intention to circumvent the judge's adjudicatory authority. The Commonwealth further believed that Thomas was within his rights to withdraw from the original plea agreement because it had not been accepted by the trial court.

The trial court opined that the situation "reek[ed] of gamesmanship" and seemed "manipulative and deceptive," before concluding that good cause existed to vacate the orders entered by the judge designate and returning the case to the posture as it existed at the conclusion of the January hearing. The trial court then issued an identical bond order, permitting Thomas to remain at liberty. Both parties filed objections to the ruling and corresponding motions to reconsider, which the trial court denied.

### IV. AUGUST 6 MOTION TO WITHDRAW FIRST PLEA AND SENTENCING

The next court date was set for August 6, 2020. The day before the hearing, Thomas filed "Defendant's Motion to Set Aside Judgment of Conviction* and Withdraw Plea of Guilty*."[2] In his motion, Thomas argued that the trial court never accepted his guilty plea or the plea agreement. The motion also asserted that Thomas wished to preserve his appellate rights by noting his objection to the trial court's ruling that it properly took Thomas' plea and could convict Thomas based upon the original plea agreement.

---

[2] The motion indicated that the "*" designation represented "Defendant's position that the Court neither accepted the Defendant's Plea of Guilty and/or Plea Agreement, nor entered an adjudication/judgment of guilt in this Matter."

On August 6, defense counsel began the hearing by asking the trial court to hear argument on the motion he filed. The trial court refused, stating the purpose of the hearing was for the trial court to consider whether it would accept the plea tendered on January 22 and whether it would permit the proposed amendment from aggravated malicious wounding to unlawful wounding. After reviewing the presentence report, sentencing guidelines, and the first plea agreement, the trial court accepted Thomas' "plea of guilty" to unlawful wounding,[3] accepted the plea agreement, and found him guilty of unlawful wounding. Thomas did not object to the plea of guilty beyond the written motion to withdraw the first plea.

Defense counsel again asked to raise his motion to withdraw the plea at this point, which the trial court then allowed. Counsel reiterated his position that, because the trial court did not accept Thomas' guilty plea, Thomas was free to renegotiate the plea agreement and was free to withdraw his guilty plea. The trial court rejected the argument, finding that Thomas tendered a plea to the trial court in January which remained outstanding. The trial court opined that, because the trial court did not reject the plea agreement, Thomas could not withdraw his guilty plea without a good faith basis.

Thomas argued that the ends of justice would be served by allowing him to withdraw his original plea. Thomas asserted that, since the January hearing, one of the Commonwealth's previously ill witnesses had died and the other witness incurred new felony charges for assault and battery of a law enforcement officer. As well, this second witness developed a "mental defect" and had been committed to Western State psychiatric hospital shortly after the January hearing.

---

[3] This was notwithstanding that the first plea agreement contemplated a no contest plea.

The Commonwealth's Attorney asserted that it agreed with Thomas' position and stated that it did not believe that "justice is being served at this point." The Commonwealth's Attorney also agreed with defense counsel's position that the plea was never accepted and thus, the parties were free to renegotiate "in the interests of justice."

After additional argument, the trial court held that Thomas had not presented sufficient grounds to withdraw his guilty plea. Sentencing was continued and on November 9, 2020, Thomas was sentenced to 5 years with 4 years suspended for unlawful wounding.

## V.   THE COURT OF APPEALS' DECISION

The Court of Appeals determined that the circuit court did not err in convicting Thomas under the first plea agreement. *Thomas v. Commonwealth*, No. 1234-21-4, 2023 Va. App. LEXIS 226 (Va. Ct. App. Apr. 11, 2023). In doing so, the Court of Appeals relied on the approbate and reprobate doctrine in determining that Thomas took successive inconsistent opinions by agreeing to the circuit court's procedure in January, then later arguing that the circuit court did not accept the plea and failed to arraign him on the unlawful wounding charge. *Id.* at *16-18. Further, the Court of Appeals determined that Thomas' assertion that the guilty plea was never accepted did not account for the circuit court's inherent authority to take the matter under advisement for a later decision. *Id.* at *18-19. In so holding, the Court of Appeals held that Thomas was required to either present a new plea agreement to the original judge or otherwise inform the original judge that he wished to withdraw his guilty plea. *Id.* at *19. In making this holding, the Court of Appeals relied on the circuit court's finding that the parties had engaged in "gamesmanship" by pursuing a more favorable plea agreement before a different judge. *Id.* The Court of Appeals finally held that the circuit court did not err in refusing to permit Thomas to withdraw his plea. *Id.* at *20-24.

ANALYSIS

The doctrine of judicial restraint dictates that generally we decide cases "'on the best and narrowest grounds available.'" *McGhee v. Commonwealth*, 280 Va. 620, 626 n.4 (2010) (*quoting Air Courier Conference v. American Postal Workers Union*, 498 U.S. 517, 531 (1991) (Stevens, J., concurring)). The best and narrowest ground in this case leads this Court to solely determine whether a trial court has the authority to enforce a proposed plea agreement that has been expressly withdrawn by the parties prior to its acceptance by the trial court. Accordingly, we need not address whether the trial court adhered to the formalities of Rule 3A:8 in its colloquy at the January hearing or whether the Court of Appeals correctly applied the doctrine of approbate and reprobate to these particular facts.

To answer the question before us, we must examine a trial court's role in "taking a plea." Our case law compels particular attention to each step of the procedure to ensure that constitutional protections are upheld. Pleas and plea agreements are so frequently addressed by trial courts in tandem that the line of demarcation between the two has blurred. As described below, a plea and an associated agreement are separate things altogether, and the latter only becomes operative when the former is taken by a valid process.

## I. PLEAS

A plea "is the act of the accused." *Whitehead v. Commonwealth*, 60 Va. 640, 643 (1870). Although the shift between arraignment and plea is a subtle one often not discernable or appreciated in courtrooms, the plea process carries with it its own set of rules, constitutional requirements, and procedures. A defendant's plea is not part of the arraignment. *See id.* at 642-45; *see also* 4 William Blackstone, Commentaries *326 (identifying the plea process as distinct

9

from arraignment and its incidents).  However, just because the plea is an "act of the accused," does not mean that a court has no obligatory role to play in an accused's plea.

The importance of the plea process is at its zenith when a trial court takes a plea of guilt. "What is at stake for an accused facing . . . imprisonment demands the utmost solicitude of which courts are capable in canvassing the matter with the accused to make sure he has a full understanding of what the plea connotes and of its consequence."  *Boykin v. Alabama*, 395 U.S. 238, 243-44 (1969).  A plea of guilty constitutes a "self-supplied conviction."  *Peyton v. Commonwealth*, 210 Va. 194, 196 (1969).  A defendant who pleads guilty waives significant constitutional rights, including "his right to trial by jury, his right against self-incrimination, his right to confront his accusers, his right to demand that the Commonwealth prove its case beyond a reasonable doubt, and his right to object to illegally obtained evidence."  *Allen v. Commonwealth*, 27 Va. App. 726, 730-31 (1998) (internal citation omitted).  This waiver of constitutional rights is "constitutionally sufficient only when it is voluntary and intelligent; the waiver is to be accepted only after the trial judge has made a determination that it is [voluntary and intelligent]."  *Gardner v. Warden*, 222 Va. 491, 494 (1981).

Following acceptance of a constitutionally sound plea, a trial court must still render its judgment.  The plea is recognized by this Court as the phase of criminal procedure where a court determines whether the evidence is sufficient to find the defendant guilty.  *See Lewis v. Commonwealth*, 295 Va. 545, 462-63 (2018).  A trial court, though it has accepted guilt, must still execute the judgment of conviction following the plea.  *Id.*  Plea agreements guide trial courts through this process.

Here, throughout the January hearing, the trial court continued to stress that Thomas' plea of no contest to the charge of unlawful wounding was prospective.  Indeed, at the January

10

hearing, the trial court never accepted Thomas' plea. While this was not error in and of itself, the trial court's non-acceptance of Thomas' proposed plea and the related plea agreement at the January hearing created the circumstances leading to the trial court's later error when it executed its judgment.

## II. PLEA AGREEMENTS

Trial courts, after accepting a plea of guilt, must then turn to the plea agreement, if one exists. The acceptance of the plea agreement is the "adjudicative element" of the procedural process. *Santobello v. New York*, 404 U.S. 257, 262 (1971). Rule 3A:8(c)(2) provides that "if a plea agreement has been reached by the parties, it shall, in every felony case, be reduced to writing, signed by the attorney for the Commonwealth, the defendant, and, in every case, his attorney, if any, and be presented to the court."

There are three types of plea agreements under 3A:8(c)(1): (A) where the Commonwealth moves for a nolle prosequi or dismissal of other charges; (B) where the Commonwealth makes a recommendation for a particular sentence that is *not* binding on the trial court; and (C) where the Commonwealth and the defense agree on a specific sentence that is the appropriate disposition of the case. The first plea agreement in this case is the third kind. This plea may be accepted or rejected by the trial court, or, the trial court "may defer its decision as to the acceptance or rejection until there has been an opportunity to consider a presentence report." Rule 3A:8(c)(2).

While each type of plea agreement is treated differently, we have held that "general principles of contract law apply to [all] plea agreements." *Wright v. Commonwealth*, 275 Va. 77, 79 (2008). A plea agreement usually entails a defendant pleading guilty in "exchange[] for sentencing concessions," a process in which "each side may obtain advantages." *Mabry v. Johnson*, 467 U.S. 504, 508-09 (1984). In this context, the plea agreement is "no less voluntary

11

than any other bargained-for exchange." *Id.* "A plea bargain standing alone is without constitutional significance; in itself it is a mere executory agreement which, until embodied in the judgment of a court, does not deprive an accused of liberty or any other constitutionally protected interest." *Id.* at 507.

### III. THE COURT'S ABILITY TO RATIFY OR REJECT PLEA AGREEMENTS

A plea agreement's transformation from executory agreement to judgment of the trial court takes place once a trial court formally and properly accepts an accused's plea of guilt and corresponding plea agreement. Of course, under Rule 3A:8, the trial court may reject a plea agreement. What a trial court may not do, however, is enforce the terms of a plea agreement to which the parties do not actually agree. A trial court's position in a plea agreement context is that of a ratifier or rejector.

Until a plea agreement is accepted by a trial court, it is executory. *Id.*[4] Only when embodied in the judgment of a trial court does the plea agreement become an executed contract. *Id.* Pending acceptance of a plea agreement, trial courts have no authority to enforce an agreement and may not participate in the plea negotiation process. *See* Rule 3A:8(c)(1).[5] A trial court's only participatory role in the plea agreement process begins with its ratification,

---

[4] While not present in this case, we note that there are exceptions to this rule. For example, a court may conditionally accept a plea agreement pending the preparation of a presentence investigation report. Rule 3A:8(c)(2). In this scenario, because a court has conditionally accepted the terms of the agreement, the agreement is not merely executory.

[5] The absence of compliance with Rule 3A:8 is neither constitutional nor jurisdictional. *See, e.g., Gardner*, 222 Va. at 493, n* (holding that the Rule governing plea agreements is "substantially equivalent" to Fed. R. Crim. P. 11); *see also United States v. Timmreck*, 441 U.S. 780, 783 (1979) (holding that a violation of Fed. R. Crim. P. 11, governing guilty pleas, "is neither constitutional nor jurisdictional"). Accordingly, trial courts have the "jurisdiction to err" under this Rule, giving this Court jurisdiction to correct such errors. *See, e.g., Parrish v. Jessee*, 250 Va. 514, 521 (1995).

rejection, or deferral pending the receipt of additional information, such as a review of a criminal record and a pre-sentence investigation report. *See generally* Rule 3A:8(c).

If the agreement has been neither ratified nor rejected, and the parties to the plea agreement no longer assent to the agreement, it cannot be enforced by the trial court under both contract principles and the plain language definition of "agreement."[6] A trial court cannot enforce and ratify an agreement when there is no longer mutual assent. *See, e.g.*, *Phillips v. Mazyck*, 273 Va. 630, 636 (2007) (explaining that "mutuality of assent - the meeting of the minds of the parties - is an essential element of all contracts," that "[u]ntil the parties have a distinct intention common to both and without doubt or difference, there is a lack of mutual assent and, therefore, no contract") (collecting cases).

Here, the trial court's error occurred when it enforced a plea agreement on August 6 that both Thomas and the Commonwealth had annulled.[7] Because the plea and plea agreement had not been accepted by the trial court, the parties were free to amend their agreement as it was merely executory.

There is no question that the trial court was aware that the parties had withdrawn from the agreement. Thomas had filed numerous motions, including his "Motion to Set Aside Judgment

---

[6] Agreement is defined as "[a] mutual understanding between two or more persons . . . a manifestation of mutual assent by two or more persons." Black's Law Dictionary 84 (11th ed. 2019) (defining "agreement"). *See also* Black's Law Dictionary 84 (11th ed. 2019) (defining "agree" as "[t]o unite in thought; to concur in opinion or purpose," or to "unite in an engagement to do or not do something"). Without an agreement, there is no contract. *See* Black's Law Dictionary 402 (11th ed. 2019) (defining "contract" as "an agreement between two or more parties creating obligations that are enforceable or otherwise recognizable at law").

[7] The Court of Appeals relied on the trial court's statement that the parties had engaged in gamesmanship as a basis for its affirmance of the trial court's actions. While such a factual finding is entitled to deference, the issue of gamesmanship – and its existence and extent – plays no part in this Court's analysis given that the question before us is purely legal.

of Conviction* and Withdraw Plea of Guilty" that made clear he withdrew his assent to the plea agreement that was presented to the trial court at the January hearing. Indeed, the Commonwealth's Attorney also indicated that he did not believe that "justice [wa]s being served at this point," and concurred with defense counsel that the parties had abandoned the plea agreement that the trial court was enforcing. The record makes clear that the only entity satisfied with the plea agreement on August 6 was the court, which had no authority to ratify or reject the agreement that, in effect, no longer existed.

By enforcing an agreement that had been expressly and mutually rescinded before the trial court had accepted it, the trial court committed reversible error. Ultimately, a plea agreement which has no connection to an accepted plea exists in vapor. It only solidifies when correctly connected to the plea contemplated by the agreement itself.

### CONCLUSION

The trial court's enforcement of a plea agreement that the parties did not agree to was reversible error. The Court of Appeals erred in affirming the trial court. Accordingly, we reverse. Therefore, the judgment of conviction will be vacated, and the judgment of the Court of Appeals is reversed. We remand the case to the Court of Appeals with direction to remand the case to the trial court for further proceedings consistent with this opinion. Upon remand, the parties will be returned to the status quo ante: an indictment for aggravated malicious wounding.

*Reversed and remanded.*

14