## Richmond

### DOYLE AND RUSSELL, INCORPORATED v. ROANOKE HOSPITAL ASSOCIATION.

January 15, 1973.

Record Nos. 7951 and 7952.

Present, All the Justices.

*Lewis T. Booker (James E. Farnham; Hunton, Williams, Gay and Gibson,* on brief), for appellant in Record Nos. 7951 and 7952.

*Wilbur L. Hazlegrove (W. A. Dickinson; Hazlegrove, Carr, Dickinson, Smith & Rea,* on brief), for appellee in Record Nos. 7951 and 7952.

CARRICO, J., delivered the opinion of the court.

Roanoke Hospital Association, the Owner, filed in the court below a motion for declaratory judgment against Doyle and Russell, Incorporated, the Contractor (Record No. 7951). In the motion, the Owner prayed for a declaration of rights and the resolution of disputes existing between it and the Contractor resulting from a con-

struction contract for the erection of an addition to Roanoke Memorial Hospital, operated by the Owner. The Contractor filed a plea in bar, asserting that the court was without jurisdiction because the contract between the parties provided that arbitration was a condition precedent to the institution of any legal action and the Owner had refused to submit to arbitration.

In a separate proceeding, the Contractor filed a petition against the Owner (Record No. 7952). In the petition, filed pursuant to Code § 8-503(b), the Contractor prayed that the court act for the Owner and appoint an arbitrator so that arbitration could proceed upon the disputes arising out of the construction contract. The Owner answered the petition, asserting that the averments of its previously filed motion for declaratory judgment set forth sufficient grounds for its refusal to arbitrate.

The two matters were consolidated and heard together. The trial court overruled the Contractor's plea in bar to the motion for declaratory judgment. The Contractor was permitted to file an answer, and proceedings were held which are of no consequence to this appeal. The court then entered a decree declaring the rights under the contract in favor of the Owner. The Contractor's petition for the appointment of an arbitrator was dismissed. We granted the Contractor appeals from the decrees.

The contract was entered into on July 27, 1967, and provided for the construction by the Contractor, under the supervision of named architects, of an addition to Roanoke Memorial Hospital for a fixed price in excess of $11,000,000. The contract called for completion by January 1, 1970, with a provision for liquidated damages to be paid by the Contractor for each day of delay beyond the completion date.

The Contractor commenced work in August, 1967. In excavating adjacent to the existing building, difficulties were encountered, and it was determined that it would be necessary to use "underpinning," rather than the Contractor's conventional method of "sheeting and shoring," to protect the existing structure from settlement. This resulted in delay and also caused additional expense to the Contractor, but it made no claim therefor at the time and, in fact, stated that it would make no claim.

During the course of preparing for the installation of footings under the addition, unusual and unforeseen subsurface soil conditions were encountered. As a result, the foundation was redesigned, and

concrete caissons were substituted in a number of places for the type footing called for in the original contract. This caused the Contractor additional expense and also resulted in delay. The Contractor presented a claim for the actual expenses of the extra work and also for the damages caused by the delay resulting from the foundation problems. The architects approved the claim for actual expenses, which the Owner paid. However, the claim for delay damages was denied.

Throughout the course of the work, the Contractor continued, without success, to press its claim for delay damages resulting from the foundation problems. At some point not disclosed by the record, the Contractor, for the first time, asserted a claim for reimbursement for the extra work in underpinning the existing structure.

The project was not completed until after the agreed date of January 1, 1970. On July 7, 1970, the Contractor served upon the Owner a demand for arbitration of (1) the Contractor's claims for additional compensation for extra work in underpinning the existing structure and for delay damages resulting from the foundation problems, and (2) the "length of time which the project was delayed as the result of the foundation problems." This demand was answered by the Owner by the filing of the motion for declaratory judgment now under consideration.

In ruling upon the Contractor's plea in bar to the motion for declaratory judgment, the trial court held that under the contract documents the Contractor was, as a matter of law, not entitled to compensation for extra work in underpinning the existing structure or for delay damages resulting from the foundation problems. Since this was so, stated the trial court, it "would be a useless exercise in rhetoric as well as a needless and unnecessary expense . . . to arbitrate such matters." Therefore, the court concluded, arbitration was "not compulsory or required" upon those matters.

The Contractor does not question the correctness of the trial court's ruling that the disputed claims were not compensable, as a matter of law, under the contract documents. Rather, the Contractor's contention is that the court was without jurisdiction in the first place to make such a ruling in view of the provisions of the construction contract relating to arbitration. So we concern ourselves only with the jurisdictional question, *i.e.*, whether the court erred in holding that arbitration was not required.

As pertinent to the arbitration question, the contract provided:

"It is mutually agreed that all disputes arising in connection with this contract shall be submitted to arbitration in accordance with the provisions of the current Standard Form of Arbitration Procedure of the American Institute of Architects and that all findings of fact by the arbitrators under this agreement shall be conclusive and binding on both parties. It is further mutually agreed that the decision of the arbitrators shall be a prior condition to any right of legal action which either party to the contract may have against the other."

The Contractor argues that since the contract required that "all disputes" arising thereunder be submitted to arbitration and provided that the decision of the arbitrators was to be a condition precedent to the institution of legal action, the trial court was without jurisdiction to entertain the motion for declaratory judgment in light of the Owner's admitted failure to submit to arbitration. The Contractor further argues that although the contract made binding only the arbitrators' findings of fact, arbitration was nonetheless required upon both legal and factual issues, with the legal findings of the arbitrators being subject to later judicial review.

The Owner contends, on the other hand, that the trial court was empowered to construe the agreement between the parties, to assess the Contractor's demand for arbitration, and to deny arbitration if the demand exceeded the agreement. This is so, the Owner argues, because only the courts have jurisdiction to determine the threshold question of what disputes are arbitrable. Here, says the Owner, the parties agreed to make binding only the arbitrators' findings of fact, and since there were no issues of fact and the compensability of the Contractor's claims had to be determined upon purely legal issues, there was nothing to arbitrate. Thus, concludes the Owner, the trial court had jurisdiction and properly refused arbitration.

The Contractor cites our decision in *Big Vein Pocahontas Co.* v. *Browning*, 137 Va. 34, 120 S. E. 247 (1923), and relies upon an exception set forth in the opinion. In that case, we had before us an arbitration agreement which provided that the decision of the arbitrators would be "final and binding, without right of appeal." One of the parties refused to submit to arbitration, and we upheld that refusal. In so holding, we followed the general rule that a party to an arbitration agreement may withdraw therefrom prior to award where the authority of the arbitrators extends to determining the ultimate liability of the parties. The rationale of the rule, we said, was

that such an agreement had the effect of ousting the courts of their jurisdiction.

However, we noted that there was an exception to the general rule, namely, "that the parties may, by contract, lawfully make the decision of the arbitrators a condition precedent to a right of action on the contract [and in] such case, until the decision is made, the courts have no jurisdiction of the case." 137 Va. at 47, 120 S. E. at 251.

The contract here involved, asserts the Contractor, contains such a condition precedent and, furthermore, Code § 8-503(b), enacted subsequent to the *Big Vein* decision, has removed any question that a party may lawfully withdraw from an arbitration agreement. All this, argues the Contractor, displays the error of the trial court in taking jurisdiction of the motion for declaratory judgment and in refusing to order arbitration.

Code § 8-503 (b) provides:

> "Notwithstanding any other provision of law, the parties may enter into an agreement to arbitrate which will be as binding as any other agreement. If, after entry into such agreement, either party refuses to cooperate in the appointment of an arbitrator or arbitrators, or if the parties cannot agree upon the arbitrator or arbitrators, then after ten days' notice on motion of either party, the court which has jurisdiction of the claim shall act for the party so refusing or failing to agree in the appointment, then the arbitration shall proceed and be as binding as if both parties had co-operated throughout the proceedings. Neither party shall have the right to revoke an agreement to arbitrate except on a ground which would be good for revoking or annulling other agreements."

This paragraph of the Code section was enacted in 1968, after the execution of the contract involved in this case. Because of this fact, the parties are in dispute whether the statute applies. However, we need not resolve that dispute because the statute, wherever applicable, must be applied in light of the terms of the arbitration agreement sought to be enforced. And while the statute may prohibit revocation of an arbitration agreement, it does not, even if applicable, answer the real question involved in this case. *Flood* v. *Country Mutual Insurance Company*, 41 Ill. 2d 91, 94, 242 N. E. 2d 149, 151 (1968).

That question is not whether a party may revoke an arbitration agreement but, instead, is this: Where parties have agreed to

submit their disputes to arbitration, who is to decide what disputes are arbitrable when one party resists submission of a particular issue? The answer is that it is the province of the courts to determine the threshold question of arbitrability, given the terms of the contract between the parties. This is so because the extent of the duty to arbitrate, just as the initial duty to arbitrate at all, arises from contractual undertakings.

A party cannot be compelled to submit to arbitration unless he has first agreed to arbitrate. By the same token, he cannot be compelled to arbitrate a question which, under his agreement, is not arbitrable. And the resisting party is entitled to a pre-submission judicial determination of arbitrability. *John Wiley & Sons* v. *Livingston*, 376 U. S. 543, 546-47 (1964); *Atkinson* v. *Sinclair Refining Co.*, 370 U. S. 238, 241 (1962); *Harrison F. Blades, Inc.* v. *Jarman Mem. Hosp. Bldg. F.*, 109 Ill. App. 2d 224, 226-29, 248 N. E. 2d 289, 290-91 (1969); *Women's Soc. for P. C. A. of Pa.* v. *Savage*, 440 Pa. 34, 36, 269 A. 2d 888, 890 (1970).

We hold, therefore, that the trial court had jurisdiction, upon the Owner's motion for declaratory judgment, to determine whether the disputes existing between the parties were arbitrable under the terms of their arbitration agreement. And we hold further that the court did not err in holding that the Contractor's monetary claims were not arbitrable.

The arbitration clause in the contract, previously quoted herein, did provide that "all disputes" arising thereunder would be submitted to arbitration. And it also stated that the decision of the arbitrators was to be a "prior condition" to any right of legal action which one party might have against the other. But that was not the complete clause. There was additional language, having the effect of making only findings of fact binding upon the parties. This additional language, when read with the rest of the clause, reveals the intention of the parties that only disputes necessitating findings of fact were required to be submitted to arbitration.

The trial court found no factual disputes existing between the parties with respect to the Contractor's monetary claims and determined that there were presented only questions of law arising from the contract documents. Those questions the court decided in favor of the Owner. As has been noted, the Contractor does not question the correctness of the ruling that its claims were not compensable under the contract documents. Nor does it really contend that the

compensability of its claims presented other than questions of law. It makes a token suggestion in its brief that there are "substantial issues of fact" to be resolved by arbitration, but it has yet, in this appeal, to point to one single disputed fact which would affect the question of the compensability of its claims.

What the Contractor really wants is to arbitrate the purely legal issues which alone affect the compensability of its monetary claims. We agree with the trial court that arbitration of these issues was not required.

■ This leaves the question of the Contractor's demand for arbitration of the "length of time which the project was delayed as the result of the foundation problems." We assume this question relates to the provision of the contract concerning liquidated damages to be paid by the Contractor for delay past the agreed final completion date and to a further provision excusing such delay for causes beyond the Contractor's control. We say we assume this because the record does not show it, and only when we read the Contractor's reply brief, filed as the last step in this appeal, do we learn what the question might be all about.

The Contractor's complaint now is that the trial court "completely overlooked" the aspect of its demand for arbitration relating to "what portions of the alleged delay were due to excusable causes beyond its control." The ready answer to the complaint is that it does not appear that this aspect of the demand was ever presented to the trial court.

The Owner's motion for declaratory judgment did not allege a dispute over the final completion date or make reference to a claim for liquidated damages. The answer filed by the Contractor was likewise silent on these subjects. The answer did contain a statement in passing that the Contractor was entitled to extensions of time for completion of *extra work*. However, this response, when read with the allegation of the motion for declaratory judgment it was supposedly answering, apparently referred to the delay, caused by the extra work on the foundation, of the date for delivery of structural steel to the project. As a result of the delayed delivery date, the supplier had made a claim for damages for storage of the steel. In any event, whatever the response meant, it was not sufficient to put the trial court on notice that the Contractor was claiming an extension of time for completion of the *entire project*.

The Contractor's petition for appointment of an arbitrator did not allege a dispute over the final completion date or mention a claim by

the Owner for liquidated damages. The petition merely incorporated by reference the demand for arbitration of the "length of delay" question.

The trial court filed written opinions in the declaratory judgment proceeding and in the matter of the appointment of an arbitrator. In neither instance was there any indication that there was any dispute in the trial court over the final completion date or a claim by the Owner for liquidated damages. The opinions related solely to the compensability of the Contractor's monetary claims for the "underpinning" work and for delay damages resulting from the foundation problems.

Only in the decree entered in the declaratory judgment proceeding was there any reference by the court to the time of completion of the entire project. The last paragraph of that decree stated that the Contractor "may be entitled to an extension of the time for completion of performance by reason of delays related to accomplishing the altered foundation work upon a proper showing of compliance with the applicable procedural requirements of the Contract Documents." The paragraph concluded, however, with the statement that the court would not attempt to determine "in this proceeding" the number of days of delay involved "in light of the adjudications and declaration of rights herein and by the Court in its written Opinion expressed."

Strangely enough, this paragraph of the court's decree has not been mentioned in this appeal, either in briefs of the parties or in oral argument. The opening briefs of the parties are just as silent on any dispute involving the final completion date. Finally, in its reply brief, the Contractor tells us that the Owner instituted, subsequent to the filing of the proceedings now under consideration, a separate action seeking to recover from the Contractor $3,000,000 in damages for delay in completing the project. This, says the Contractor, is what its demand for arbitration of the "length of delay" question is all about.

We express no opinion whether the Contractor's demand for arbitration of the "length of delay" question would have presented an arbitrable issue in connection with a dispute over the final completion date and a resulting claim *by the Owner* for liquidated damages. So far as the record reflects, the "length of delay" question was presented to the trial court only in connection with the claim *by the Contractor* for damages resulting from the period of delay caused by the foundation problems, a claim which, as we have previously seen, was not

arbitrable. So we cannot say that the court "completely overlooked" the other aspect of the Contractor's demand for arbitration.

Under these circumstances, we are unwilling to reverse the trial court, as the Contractor asks us to do, for failure to order arbitration of the "length of delay" question. However, the last paragraph of the declaratory judgment decree, wherein it was recognized that the Contractor "may be entitled to an extension of the time for completion of performance," indicates the singular initiative on the part of the trial court to preserve the question in event of future dispute between the parties over the final completion date. For this reason, our affirmance on this point will be without prejudice to the rights of either party in such a dispute.

The judgments of the trial court will be affirmed.

*Affirmed.*