Maria **GUADAGNO**, Plaintiff,

v.

**E\*TRADE BANK**, Defendant.

No. CV 08–03628 SJO (JCX).

United States District Court,
C.D. California.

Dec. 29, 2008.

James S. Notis, Mark C. Gardy, Gardy and Notis LLP, Englewood Cliffs, NJ, Jeff S. Westerman, Michiyo M. Furukawa, Sabrina S. Kim, Milberg LLP, Los Angeles, CA, Lee Squitieri, Squitieri and Fearon LLP, New York, NY, for Plaintiff.

Douglas P. Lobel, David A. Vogel, Cooley Godward Kronish LLP, Reston, VA, Michelle C. Doolin, Leo P. Norton, Cooley Godward Kronish LLP, San Diego, CA, for Defendant.

**ORDER GRANTING IN PART DEFENDANT'S MOTION TO COMPEL ARBITRATION AND GRANTING IN PART DEFENDANT'S RULE 12(b)(6) MOTION TO DISMISS**
[Docket Nos. 18, 20]

S. JAMES OTERO, District Judge.

This matter is before the Court on Defendant E*Trade Bank's ("E*Trade") Motion to Compel Arbitration and Rule 12(b)(6) Motion to Dismiss, both filed August 11, 2008. Plaintiff Maria Guadagno filed oppositions to both, to which E*Trade replied. The Court found these matters suitable for disposition without oral argument and vacated the hearings set for January 12, 2009. *See* Fed.R.Civ.P. 78(b). For the foregoing reasons, E*Trade's Motion to Compel Arbitration is GRANTED IN PART and E*Trade's Motion to Dismiss is GRANTED IN PART.

I. *BACKGROUND*

Guadagno has an interest-earning account with E*Trade, a federally-chartered thrift and savings bank. (Compl. ¶¶ 6, 11.) She uses E*Trade's online service to pay her bills, instructing E*Trade to withdraw money from her account and send it to her creditors or others in the form of checks or electronic payments. (Compl. ¶¶ 11–12.) Specifically, Guadagno directs E*Trade to begin processing a payment to a creditor on a "start date" three or more business days before the payment's due date. (*See* Styles Decl. Ex. 14.) E*Trade immediately withdraws the payment from her account, but waits three or more business days before sending the payment to the creditor. (*See* Styles Decl. Ex. 14–5.) Between the "start date" and the date on which E*Trade sends the payment, Guadagno earns no interest on the money that has been withdrawn for payment. (Compl. ¶ 13.)

Based on this process, Guadagno brought suit against E*Trade alleging claims for: 1) violation of the Electronic Funds Transfer Act (the "EFTA"); 2) violation of California's Unfair Competition Law (the "UCL"); 3) unjust enrichment; and 4) breach of contract. Guadagno purports to bring these claims as a class action on behalf of a class of "persons who were charged fees or charges in violation of the EFTA, the form of lost interest on their funds on deposit with [E*Trade] and/or who were deprived of interest on monies in their accounts with [E*Trade] to the extent alleged herein." (Compl. ¶ 25.)

E*Trade now moves to compel arbitration based on the arbitration clause contained in its Account Agreement (the "Agreement"), and alternatively moves to dismiss for failure to state a claim under Federal Rule of Civil Procedure ("Rule") 12(b)(6).

## II. *DISCUSSION*

### A. *E*Trade's Motion to Compel Arbitration*

#### 1. *The Agreement and Arbitration Clause*

E*Trade argues that the Court should compel arbitration based on the Arbitration clause contained in the Agreement. Before opening her account with E*Trade, Guadagno filled out an online application. (*See* Squitieri Decl. ¶ 4.) The online application states: "The following contain important information about your account," and provides a highlighted, bullet-pointed, underlined link to the Agreement. (Application, filed as Squitieri Decl. Ex. A, 2.) Directly below the link is a box that applicants must check to proceed with opening an E*Trade account. (Squitieri Decl. ¶ 5.) The text next to the box states: "By checking this box, you acknowledge that you have reviewed the ... **Agreement** ...." (Application 2.)

The Agreement contains, among other terms, an Arbitration clause, a Governing Law ("Choice–of–Law") provision, and an Amendments provision. (Agreement, filed as Styles Decl. Ex. 1, 6–8.) The introduction to the Agreement states:

> **Welcome to E*TRADE Bank.** This booklet, your deposit application, Rate & Fee Schedule, and Privacy Statement represent our agreement with you and contain important information about your account. Please read them carefully. By signing the deposit application that was provided in the packet that you received, requesting an account, or maintaining an account, you acknowledge that you have reviewed, understand and agree to these terms. YOUR ATTENTION IS DRAWN TO THE ARBITRATION PROVISION OF THIS AGREEMENT. IF A DISPUTE ARISES BETWEEN US, YOU OR WE MAY REQUIRE THAT IT BE RESOLVED THROUGH ARBITRATION, RATHER THAN BY OTHER LEGAL PROCESS.

(Agreement 2.)

The Arbitration clause is preceded by a bold, capitalized introduction that states:

> **IT IS IMPORTANT THAT YOU READ THIS ARBITRATION CLAUSE. IT PROVIDES THAT YOU MAY BE REQUIRED TO SETTLE ANY CLAIM OR DISPUTE THROUGH ARBITRATION, EVEN IF YOU WOULD PREFER TO LITIGATE SUCH CLAIMS BEFORE A JURY. OTHER RIGHTS THAT YOU WOULD HAVE IF YOU WENT TO COURT, SUCH AS DISCOVERY OR THE RIGHT TO APPEAL THE DECISION, MAY NOT BE AVAILABLE IN ARBITRATION OR MAY BE MORE LIMITED. YOU SHOULD CONSULT LEGAL COUNSEL TO**

DETERMINE WHETHER THIS ARBITRATION CLAUSE IS APPROPRIATE FOR YOU. YOU CAN OPT OUT OF THE ARBITRATION BY FOLLOWING THE INSTRUCTIONS IN THE LAST PARAGRAPH OF THIS ARBITRATION CLAUSE. (Agreement 6.) The opt-out provision provides: "If you do not wish to be bound by this arbitration clause, you must notify the Bank in writing within 60 days after receiving a copy of this Agreement." (Agreement 7.)

The Arbitration clause provides that "all disputes, claims, or controversies between you and the Bank, except claims subject to the jurisdiction of the small claims court ... shall be resolved by binding arbitration at the election of either party [and] ... shall be conducted according to the rules of the American Arbitration Association ("AAA")." (Agreement 6–7.) The arbitration clause "applies to all disputes arising under case law, statutory law, and all other laws, including, but not limited to, all contract, tort, and property disputes, [as well as] disputes arising out of or relating to your relationship with [E*Trade and] your account with [E*Trade]...." (Agreement 6–7.)

The Arbitration clause contains a class action waiver stating that "except as otherwise required by law, you may not assert claims on behalf of others in an arbitration proceeding, and the arbitrator shall not have the authority to award relief for or against anyone on a class or representative basis." (Agreement 7.) The Arbitration clause also contains a fee-splitting term under which E*Trade will pay one half of any arbitration filing fee as well as one half of all arbitration fees except those assessed during the first day of arbitration. (Agreement 7.) If the costs of arbitration are too burdensome, one may seek a waiver from AAA or request that E*Trade pay a greater share of the arbitration fee. (Agreement 7.) The Arbitration clause's alternative remedies term provides that it does not "limit or constrain E*Trade's right to set off, to obtain provisional or ancillary remedies, to interplead funds in the event of a dispute, to exercise any security interest or lien [E*Trade] may hold in property, or to comply with legal process involving your accounts or other property." (Agreement 7.)

The Choice–of–Law provision, listed in the Additional Terms and Conditions clause, states: "To the extent this Agreement is subject to the laws of any state, it will be subject to the laws of Virginia...." (Agreement 8.) The Amendments provision, also listed in the Additional Terms and Conditions clause, states that E*Trade "may change (add to, delete or alter) the terms of our arrangement with you at any time.... Unless otherwise required by law, we may amend the agreement without prior notice (e.g. "by posting the information at our Internet Web site, or otherwise making it available to you)." (Agreement 7.)

Guadagno contends that California law governs her agreement with E*Trade, and that under California law she did not assent to the Arbitration clause when she checked the acknowledgment box. (Pl.'s Opp. 4, 6.) Moreover, she argues that the Arbitration clause was unclear. (Pl.'s Opp. 6.) She also argues that the Agreement is unconscionable and unenforceable because it contains the Amendments provision, class action waiver, alternative remedies term, and fee-splitting term. (Pl.'s Opp. 9.) Alternatively, Guadagno argues that under California law the class action waiver contained in the Arbitration clause is unconscionable and should be severed, allowing arbitration to proceed on a class basis. (Pl.'s Opp. 18.) E*Trade maintains that Virginia law governs the Agreement,

and that even under California law, Guadagno assented to the Arbitration clause.

The Federal Arbitration Act ("FAA") provides that "a written provision in any . . . contract evidencing a transaction involving interstate commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Accordingly, the Court must determine whether there are legal or equitable grounds to refrain from enforcing the Arbitration clause, and whether the Arbitration clause applies to Guadagno's claims. First, however, the Court must determine which state's law governs the Agreement.

### 2. *Virginia Law Governs the Account Agreement.*

■ A federal district court should apply the choice-of-law rules of the state in which it sits. *See, e.g., Unified W. Grocers, Inc. v. Twin City Fire Ins. Co.,* 457 F.3d 1106, 1111 (9th Cir.2006). The Court will therefore apply California choice-of-law rules in order to determine which state's law, California's or Virginia's, governs the Account Agreement.

■ Under California rules, a contract's choice-of-law provision determines the governing law unless: 1) the chosen state has no substantial relationship to the contracting parties and no reasonable basis for selecting the state exists; or 2) application of the chosen state's law would contradict a fundamental policy of the state of California and California has a materially greater interest in the matter. *See, e.g., Discover Bank v. Superior Court,* 36 Cal.4th 148, 30 Cal.Rptr.3d 76, 113 P.3d

1100, 1117 (2005); *see also Gen. Signal Corp. v. MCI Telecomms. Corp.,* 66 F.3d 1500, 1506 (9th Cir.1995). The party advocating application of the choice-of-law provision has the burden of establishing a substantial relationship between the chosen state and the contracting parties. *See Wash. Mut. Bank v. Superior Court,* 24 Cal.4th 906, 103 Cal.Rptr.2d 320, 15 P.3d 1071, 1078 (2001); *see also Omstead v. Dell, Inc.,* 533 F.Supp.2d 1012, 1035 (N.D.Ca.2008). The burden then shifts to the party opposing application to show that application would violate a fundamental policy of California. *See Wash. Mut. Bank,* 103 Cal.Rptr.2d 320, 15 P.3d at 1078; *see also Omstead,* 533 F.Supp.2d at 1035.

### a. *Both a Substantial Relationship with Virginia and a Reasonable Basis for Selecting Virginia Law Exist Because E\*Trade Is Domiciled in Virginia.*

■ A "substantial relationship" between the chosen state and the contracting parties exists if "one of the parties is domiciled in the chosen state." *Nedlloyd Lines B.V. v. Superior Court,* 3 Cal.4th 459, 11 Cal.Rptr.2d 330, 834 P.2d 1148, 1153 (1992). Further, "if one of the parties resides in the chosen state, the parties have a reasonable basis" for selecting that state. *Id.* Here, E\*Trade's headquarters are in Virginia.[1] (Styles Decl. ¶ 1.) Accordingly, the parties have a substantial relationship with Virginia and a reasonable basis for selecting Virginia law.

### b. *Selection of Virginia Law Does Not Contradict California Fundamental Policy.*

■ California does not have a fundamental policy against all class action waiv-

---

1. Contrary to Guadagno's position that E\*Trade is headquartered in New York, E\*Trade Bank is headquartered in Arlington Virginia, while its parent company E\*Trade Financial Corporation is headquartered in

New York. *See* www.hoovers.com/e\*trade–bank/–ID_53821–/free–co–locations.xhtml; www.hoovers.com/e\*trade–financial/–ID_ 51422–/free–co–factsheet.xhtml.

ers. *See Discover Bank,* 30 Cal.Rptr.3d 76, 113 P.3d at 1110. Rather, California has a fundamental policy against exculpatory class action waivers in consumer contracts of adhesion, because they are unconscionable. *See id.; see also* Cal. Civ.Code § 1668. A contract of adhesion is a contract offered on a take-it-or-leave-it basis, in that the offeree must simply accept or reject the terms without any negotiation. *See, e.g., Flores v. Transamerica Home-First, Inc.,* 93 Cal.App.4th 846, 113 Cal. Rptr.2d 376, 381 (2001). If the offeree has a meaningful opportunity to freely opt out of a term after assenting to the contract, and the terms of the contract are clear, then the contract is not being offered on a take-it-or-leave-it basis. *See Circuit City Stores, Inc. v. Ahmed,* 283 F.3d 1198, 1199–1200 (9th Cir.2002); *see also Gentry v. Superior Court,* 42 Cal.4th 443, 470, 64 Cal.Rptr.3d 773, 165 P.3d 556 (2007).

 Here, Guadagno had a meaningful opportunity to opt out of the Arbitration clause, which contained the class action waiver, by notifying E*Trade in writing within 60 days of receiving the Agreement. The Agreement highlighted the Arbitration clause, and the introduction to the Arbitration clause highlighted the opt out term. Because the Arbitration clause containing the waiver was not presented on a take-it-or-leave-it basis, but gave Guadagno sixty days to opt out, it was not unconscionable. Thus, application of Virginia

law does not contradict California's fundamental policy against enforcing unconscionable consumer class action waivers.[2]

### 3. *The Arbitration Clause Is Valid.*

 Both the United States and Virginia favor enforcing arbitration clauses. *See, e.g., Buckeye Check Cashing, Inc. v. Cardegna,* 546 U.S. 440, 443, 126 S.Ct. 1204, 163 L.Ed.2d 1038 (2006); *see also TM Delmarva, LLC v. NCP of Va., LLC,* 263 Va. 116, 557 S.E.2d 199, 202 (2002). Under the FAA and Virginia law, an arbitration clause is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2; Va.Code Ann. § 8.01–581.01. If a party challenges the validity of an arbitration clause itself, rather than the entire contract containing the clause, the arbitration clause's validity is for the court, rather than an arbitrator, to decide. *See, e.g., Buckeye Check Cashing, Inc.,* 546 U.S. at 445–46, 126 S.Ct. 1204. Accordingly, the Court will decide the validity of the arbitration clause.

 A defendant seeking to compel arbitration has the burden of showing that an agreement to arbitrate exists. *See, e.g., Hendrick v. Brown & Root, Inc.,* 50 F.Supp.2d 527, 533 (E.D.Va.1999). Ordinary state law principles governing the formation of contracts in general are used to determine whether the parties agreed to

**2.** Guadagno contends that enforcement of the class action waiver provision is contrary to California's fundamental policy against enforcing unconscionable class action waivers, and cites the Ninth Circuit's unpublished opinion in *Davis v. Chase Bank USA,* No. 07–55561, 299 Fed.Appx. 662, 2008 WL 4832998, 2008 U.S.App. LEXIS 23014 (9th Cir. Nov. 3, 2008), as support. In *Davis,* a bank sent the plaintiff a notice of changes in the terms of his account, which amended the arbitration agreement to add a class action waiver. The

notice was sent to the plaintiff along with a bill, and stated that unless the plaintiff closed his account, he assented to the amendment. *Id.* at 663–64, at *1–2. The Ninth Circuit held that the class action waiver was unconscionable because it was "in the form of a bill stuffer the consumer would be deemed to accept if he did not close his account." *Id. Davis* is clearly distinguishable because the class action waiver here was not presented to Guadagno in the form of a bill stuffer, and because she was free to opt out of that term while still maintaining her account.

arbitrate. *Id.* Unconscionability is a ground "for the revocation of any contract" under the FAA and Virginia law, and if applicable it renders an arbitration clause unenforceable. *See Shroyer v. New Cingular Wireless Servs., Inc.*, 498 F.3d 976, 981 (9th Cir.2007); *see also Bandas v. Bandas*, 16 Va.App. 427, 431, 430 S.E.2d 706 (1993).

### a. *Guadagno Assented to the Arbitration Clause.*

█ A party cannot be compelled to arbitrate unless that party has first agreed to arbitrate in a binding contract. *See, e.g., Doyle & Russell, Inc. v. Roanoke Hospital Ass'n*, 213 Va. 489, 193 S.E.2d 662, 666 (1973). No binding contract exists without mutual assent, i.e., offer and acceptance. *See, e.g., Phillips v. Mazyck*, 273 Va. 630, 643 S.E.2d 172, 175 (2007). Offers may include application forms. *See Hayes v. Durham Life Ins. Co.*, 198 Va. 670, 96 S.E.2d 109, 111 (1957); *see also Kimrey v. Am. Bankers Life Assurance Co. of Fla.*, No. 07–00416, 2008 WL 746999, at *2–*3 (W.D.Va. Mar. 20, 2008). Whether the offeree has accepted the offer is determined objectively, based on whether it would be clear to a reasonable person in the offeror's position that the offeree had accepted. *See, e.g., Green's Ex'rs v. Smith*, 146 Va. 442, 131 S.E. 846, 848–49 (1926).

Once the offeree has accepted, he is bound by the terms of the contract, regardless of whether he read over the terms beforehand. *Green's Ex'rs*, 131 S.E. at 849. For instance, a party may be bound by a "clickwrap" agreement if the terms are clear and acceptance is unambiguous, regardless of whether he actually reads them. *See A.V. v. iParadigms, L.L.C.*, 544 F.Supp.2d 473, 480 (E.D.Va. 2008) (holding that under Virginia law the plaintiffs assented to a "clickwrap" agreement after clicking on an "I Agree" icon which appeared directly below a list of terms). However, if the terms are not "reasonably conspicuous," such that a reasonably prudent offeree would notice them, a party will not be bound by those terms despite clicking on a "Yes [I agree]" icon. *Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17, 31–35 (2d Cir.2002) (holding that under California law, the plaintiff did not accept any software-download contract terms despite clicking on a "Yes" icon because the terms were only visible on a separate screen below the "Yes" icon, and a reasonably prudent offeree would not have scrolled down and noticed the terms before clicking "Yes.")

█ In the instant case, a highlighted, underlined link to the Agreement was directly above the acknowledgment box, along with notice that "The following contain important information about your account(s)." A reasonably prudent offeree would have noticed the link and reviewed the terms before clicking on the acknowledgment icon. Further, the introduction to the Agreement stated that by "requesting an account, or maintaining an account, you acknowledge that you have reviewed, understand and agree to these terms," and "YOUR ATTENTION IS DRAWN TO THE ARBITRATION PROVISION OF THIS AGREEMENT." The Arbitration clause itself stated: **"IT IS IMPORTANT THAT YOU READ THIS ARBITRATION CLAUSE."** Thus, because the terms of the Arbitration clause were clear and reasonably conspicuous, and because Guadagno clicked on the acknowledgment icon indicating she accepted the Agreement's terms, she assented to the Arbitration clause.

### b. *The Arbitration Clause is Not Unconscionable.*

█ Virginia enforces contracts unless they are illegal or repugnant to public

policy. *See, e.g., Shuttleworth, Ruloff & Giordano, P.C. v. Nutter,* 254 Va. 494, 493 S.E.2d 364, 366 (1997). Unconscionable contracts violate Virginia public policy. *See, e.g., Smyth–Bros.–McCleary–McClellan Co. v. Beresford,* 128 Va. 137, 104 S.E. 371, 382 (1920). An unconscionable contract is so unequal that it "shocks the conscience." *See, e.g., Mgmt. Enters., Inc. v. Thorncroft Co.,* 243 Va. 469, 416 S.E.2d 229, 231 (1992). The plaintiff bears the burden of proving a contract is unconscionable by clear and convincing evidence. *See, e.g., Pelfrey v. Pelfrey,* 25 Va.App. 239, 487 S.E.2d 281, 284 (1997). An arbitration clause "shocks the conscience" if it is so unequal that it is clearly intended to deprive the other party of all remedies and is part of a contract of adhesion. *See Philyaw v. Platinum Enters., Inc.,* No. 00–236, 2001 WL 112107, at *1–3 (Va.Cir. Jan. 9, 2001); *see also March v. Tysinger Motor Co.,* No. 07–508, 2007 WL 4358339, at *4 (E.D.Va. Dec. 12, 2007). As explained above, the Agreement was not a contract of adhesion.

 While a class action waiver does not render an arbitration clause unconscionable, the prohibitively high cost of arbitration may. *See Freeman v. Capital One Bank,* No. 08–242, 2008 WL 2661990, at *3 (E.D.Va. July 3, 2008); *March v. Tysinger Motor Co.,* No. 07–508, 2007 WL 4358339, at *4–6 (E.D.Va. Dec. 12, 2007); *Green Tree Fin. Corp.-Ala. v. Randolph,* 531 U.S. 79, 92, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000). Merely showing that the costs and fees of arbitration are unknown is not enough to prove that arbitration is prohibitively expensive. *See Sydnor v. Conseco Fin. Servicing Corp.,* 252 F.3d 302, 305–06 (4th Cir.2001) (applying Virginia law). Instead, the party must provide detailed proof that the cost of arbitration is so high that it will prevent the party's rights from being vindicated. *See Green Tree,* 531 U.S. at 90–92, 121 S.Ct. 513. Here, the Agreement's fee splitting provides that parties may seek an arbitration fee waiver from AAA or ask E*Trade to pay a higher share of the fee. (Agreement 7.) Guadagno does not argue that the costs are prohibitively expensive to her and offers no proof to that effect, and accordingly has failed to meet her burden.

### 4. *Guadagno's Claims for violation of the EFTA, Common Law Unjust Enrichment, and Breach of Contract Are Arbitrable.*

 A party cannot be compelled to arbitrate unless the party's claims are arbitrable. *See, e.g., Doyle & Russell, Inc.,* 193 S.E.2d at 666. Courts, not arbitrators, determine which claims are arbitrable under an arbitration clause. *Id.* If a contract contains an arbitration clause, claims brought under or against that contract are presumed arbitrable. *See, e.g., AT & T Techs., Inc. v. Commc'ns Workers of Am.,* 475 U.S. 643, 649, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986). Doubts should be resolved in favor of arbitrability. *Id.* Claims for violation of the EFTA, common law unjust enrichment, and breach of contract are arbitrable. *See Johnson v. W. Suburban Bank,* 225 F.3d 366, 379 (3d Cir.2000); *Cruz v. PacifiCare Health Sys., Inc.,* 30 Cal.4th 303, 133 Cal.Rptr.2d 58, 66 P.3d 1157, 1168 (2003); *Chiron Corp. v. Ortho Diagnostic Sys., Inc.,* 207 F.3d 1126, 1131 (9th Cir.2000). However, while a claim for disgorgement under the UCL is arbitrable, a claim for injunctive relief under the UCL is not. *Cruz,* 133 Cal.Rptr.2d 58, 66 P.3d at 1164–68.

Here, the Arbitration clause covers all of Guadagno's claims because the clause specifically covers claims that, like Guadagno's, are based on statutory or contract law and relate to a customer's E*Trade account. (Agreement 6–7.) The only

claim that is not arbitrable is the claim for injunctive relief under the UCL. Thus, the Court GRANTS E*Trade's Motion to Compel Arbitration on Guadagno's claims for violation of the EFTA, disgorgement under the UCL, unjust enrichment, and breach of contract.

### B. *E*Trade's Rule 12(b)(6) Motion to Dismiss*

In addition to arguing that Guadagno's claims should be arbitrated, E*Trade argues in the alternative that Guadagno's claims should be dismissed. However, as stated above, Guadagno is compelled to arbitrate all of her claims except the UCL claim for injunctive relief. As courts cannot resolve claims covered by an arbitration clause, the Court will only consider E*Trade's Motion to Dismiss in regard to the non-arbitrable UCL injunctive relief claim. *See* 9 U.S.C. §§ 3, 4; *see also* Va.Code Ann. § 8.01–581.02(A).

A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the claims asserted. *Ileto v. Glock, Inc.*, 349 F.3d 1191, 1199–200 (9th Cir.2003); *see* Fed.R.Civ.P. 12(b)(6). A court accepts the non-moving party's material allegations as true and construes them in the light most favorable to the non-moving party. *Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir.2000). A claim is dismissed only if it appears beyond doubt that the plaintiff can prove no set of facts that would entitle the plaintiff to relief. *Homedics, Inc. v. Valley Forge Ins. Co.*, 315 F.3d 1135, 1138 (9th Cir.2003). For example, if a plaintiff's claim is preempted by federal law, it must be dismissed. *See Silvas v. E*Trade Mortgage Corp.*, 514 F.3d 1001, 1005–08 (9th Cir.2008).

■ E*Trade contends that the UCL claim for injunctive relief is preempted by the federal Home Owner's Loan Act ("HOLA") and accompanying Office of Thrift Supervision ("OTS") regulations. (Def.'s Mot. 7–12.) HOLA and the OTS regulations under it preempt the field of deposit-related activities. *See Bank of Am. v. City & County of S.F.*, 309 F.3d 551, 558 (9th Cir.2002) (holding that HOLA preempts state law because "regulation by OTS has been so pervasive as to leave no room for state regulatory control"); *see also* 12 C.F.R. § 557.11 (providing that "OTS hereby occupies the entire field of federal savings associations' deposit-related regulations.... Federal savings associations may exercise deposit-related powers as authorized under federal law, including this part, without regard to state laws purporting to regulate or otherwise affect deposit activities...."). Further, OTS regulations explicitly provide that "OTS preempts state laws that purport to impose requirements governing "(b) checking accounts; (d) funds availability; [and] (f) service charges and fees." " 12 C.F.R. § 557.12. Here, an injunction under the UCL against E*Trade's current online bill payment process would affect E*Trade's management of and availability of funds in checking accounts. Accordingly, the claim is preempted.

■ Guadagno contends that her UCL injunctive relief claim is not preempted because OTS regulations do not preempt state laws that only incidentally affects the deposit-related activities of federal thrifts, such as generally-applicable contract and tort law. 12 C.F.R. § 557.13. However, if a law of general application requires a thrift and savings bank to affirmatively change its practices, it is preempted. *See Reyes v. Downey Sav. & Loan Ass'n*, 541 F.Supp.2d 1108, 1113 (C.D.Cal.2008); *see also Wash. Mut. Bank v. Superior Court*, 95 Cal.App.4th 606, 115 Cal.Rptr.2d 765, 776 (2002); *Boursiquot v. Citibank*, 323 F.Supp.2d 350, 355–56 (D.Conn.2004) (holding that HOLA and OTS regulations

preempted Connecticut's Unfair Trade Practices Act as applied because plaintiffs' claim would have required federal savings and loan association to alter lending practices). Thus, even if Guadagno's UCL injunctive relief claim was not explicitly preempted by 12 C.F.R. 557.12(b) and (d), it would nonetheless be preempted because it would require E*Trade to affirmatively change its deposit-related practices.

## III. *RULING*

For the foregoing reasons, E*Trade's Motion to Compel Arbitration is GRANTED IN PART, with regard to Guadagno's claims for violation of the EFTA, disgorgement under the UCL, unjust enrichment, and breach of contract. In addition, E*Trade's Motion to Dismiss is GRANTED IN PART, as to Guadagno's claim for injunctive relief under the UCL.

IT IS SO ORDERED.