PRESENT:  Goodwyn, C.J., Powell, Kelsey, McCullough, and Chafin, JJ., and Russell, S.J.

SARAH BOYLE, INDIVIDUALLY, ET AL.

OPINION BY
JUSTICE STEPHEN R. McCULLOUGH
APRIL 14, 2022

v.  Record No. 210382

LINDA D. ANDERSON, ANCILLARY
ADMINISTRATOR OF THE ESTATE OF
JOHN S. ANDERSON

FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Bruce D. White, Judge

This appeal calls upon us to decide the narrow question of whether the Virginia Uniform Arbitration Act, Code §§ 8.01-581.01 to -.016) ("VUAA") or the Federal Arbitration Act, 9 U.S.C. §§ 1-16 ("FAA") compels enforcement of an arbitration clause in a trust.  Both statutes require arbitration for contracts.  The VUAA also compels arbitration for written agreements to submit a dispute to arbitration.  We conclude that a trust is not a contract and, therefore, the VUAA and the FAA do not require arbitration on that basis.  We further conclude that a beneficiary of a trust is not a party to an agreement to arbitrate and, therefore, the provision of the VUAA compelling arbitration when there exists a written agreement to arbitrate likewise does not apply.  Accordingly, we will affirm the judgment of the circuit court.

BACKGROUND

Before he passed away, Strother R. Anderson created an *inter vivos* irrevocable trust that was to be divided into three shares:  one for his daughter Sarah Boyle, one for his son John, and one for the children of his third child Jerry.  Upon Strother Anderson's death, Boyle became the trustee as well as a beneficiary of the trust.  The trust contains an unambiguous arbitration clause.  It provides that "[a]ny dispute that is not amicably resolved, by mediation or otherwise, shall be resolved by arbitration . . . ."

Linda D. Anderson ("Linda"), the widow of John Anderson, and the ancillary administrator of his estate, filed a complaint against Boyle, alleging that Boyle breached her duties as trustee. The complaint seeks, among other things, Boyle's removal or, in the alternative, an order that she comply with the terms of the trust. In response, Boyle filed a motion to compel arbitration. Linda opposed arbitration, contending that the trust was not a contract and that she had not agreed to resolve the dispute by arbitration. The circuit court denied the motion to compel arbitration. Boyle filed an interlocutory appeal under Code § 8.01-581.016, which authorizes an appeal from an order "denying an application to compel arbitration made under § 8.01-581.02."

We awarded Boyle an appeal on the following two assignments of error:

> 1. The trial court erroneously ruled that a trust agreement with mandatory arbitration provisions could not qualify as a written contract or agreement under Virginia's Arbitration Act.
>
> 2. The trial court erroneously ruled that a trust agreement with mandatory arbitration provisions could not qualify as a written contract or agreement under the FAA.

## ANALYSIS

I.      THE VUAA DOES NOT COMPEL ARBITRATION OF A TRUST PROVISION.

Access to the courts to seek legal redress is a constitutional right. *See* Va. Const. art. I § 12; *see also Mission Residential, L.L.C. v. Triple Net Properties, L.L.C.*, 275 Va. 157, 161 (2008). Like many other constitutional rights, however, the right of access to the courts can be waived. *Id.* Parties can opt out of resolving their disputes in court and choose instead to submit their disputes to resolution through mediation or arbitration. However, "[a] party cannot be compelled to submit to arbitration unless he has first agreed to arbitrate." *Doyle & Russell, Inc. v. Roanoke Hosp. Ass'n*, 213 Va. 489, 494 (1973).

2

Boyle contends that a trust is a contract or agreement, and therefore it falls within the provisions of the VUAA. Linda contests this reading of the statute. "Under well-established principles, an issue of statutory interpretation is a pure question of law which we review de novo." *Conyers v. Martial Arts World of Richmond, Inc.*, 273 Va. 96, 104 (2007).

The VUAA establishes a public policy in favor of arbitration. *TM Delmarva Power, L.L.C. v. NCP of Va., L.L.C.*, 263 Va. 116, 122-23 (2002). It provides in relevant part:

> A written agreement to submit any existing controversy to arbitration or a provision in a written contract to submit to arbitration any controversy thereafter arising between the parties is valid, enforceable and irrevocable, except upon such grounds as exist at law or in equity for the revocation of any contract.

Code § 8.01-581.01. Textually, then, the VUAA applies to both a "written agreement to submit any existing controversy to arbitration" and to "a provision in a written contract to submit" a controversy to arbitration. *Id.*

A.       A trust is not a "contract."

"[A] contract is defined as '[a]n agreement between two or more persons which creates an obligation to do or not to do a particular thing.'" *Buchanan v. Doe*, 246 Va. 67, 72 (1993) (quoting Black's Law Dictionary 322 (6th ed. 1990)).

One treatise posits that "[t]he trust originated in medieval England, apparently from a desire to make gifts to medieval church orders in England which were prohibited by their vows from owning property." William M. McGovern, Sheldon F. Kurtz & David M. English, Principles of Wills, Trusts, & Estates 409 (2d ed. 2011). To circumvent this obstacle, "[a] legal gift was . . . made to certain responsible persons, who were mandated to hold the property to the use of the friars." *Id.* Over the centuries, it evolved into a flexible tool to make dispositions of property. *See Collins v. Lyon, Inc.*, 181 Va. 230, 247 (1943) ("A trust can be created for any

3

purpose which is not illegal [and] which is not against public policy . . . . The purposes for which trusts can be created are as unlimited as the imagination of lawyers.") (citation omitted).

We conclude that a trust does not qualify as a contract or agreement. Trusts are generally conceived as donative instruments. The Second Restatement of Trusts, carrying forward the language of the first Restatement of 1935, states that "[t]he creation of a trust is conceived of as a conveyance of the beneficial interest in the trust property rather than as a contract." Restatement (Second) of Trusts § 197 cmt. B (1959). The Second Restatement defines a trust as "a fiduciary relationship with respect to property." *Id.* § 2.

Beyond this longstanding conception of trusts, contracts and trusts differ in how they are formed. "The existence of the contract depends on actual acceptance of an offer. It is founded on mutual assent. A trust is in the nature of a conveyance of an equitable interest, and its formation is not dependent on the beneficiary's knowledge or acquiescence." Amy Morris Hess, et al., Bogert's Law of Trusts and Trustees § 17 (2021). Additionally, trusts differ from contracts in that "[n]o consideration is required for the creation of a trust. . . . In fact, most trusts are created by gratuitous transfer." Restatement (Third) of Trusts, Introductory Note 1 (2003). Beneficiaries of a trust generally do not provide any consideration to the settlor of the trust.

Additionally, the duties owed by contracting parties also differ from the fiduciary duties a trustee owes to the beneficiaries of the trust. *See Rowland v. Kable*, 174 Va. 343, 367 (1940) (noting the fiduciary nature of a trustee's duties); *see also* Restatement (Third) of Trusts § 2 (2003) ("A trust . . . is a fiduciary relationship with respect to property."). As Judge Cardozo famously wrote,

> Many forms of conduct permissible in a workaday world for those
> acting at arm's length, are forbidden to those bound by fiduciary
> ties. A trustee is held to something stricter than the morals of the
> market place. Not honesty alone, but the punctilio of an honor the

4

most sensitive, is then the standard of behavior. As to this there has developed a tradition that is unbending and inveterate. Uncompromising rigidity has been the attitude of courts of equity when petitioned to undermine the rule of undivided loyalty by the "disintegrating erosion" of particular exceptions. Only thus has the level of conduct for fiduciaries been kept at a level higher than that trodden by the crowd.

*Meinhard v. Salmon*, 164 N.E. 545, 546 (N.Y. 1928) (citation omitted); *see also* Bogert's Law of Trusts and Trustees § 17 (in contrast to the fiduciary duties owed by a trustee, "[n]o rule prevents parties to a contract from acting freely for their own interests during the execution of the contract. They have no duty of loyal representation of the opposing party in the relationship"). A beneficiary's action against a trustee is properly brought as a claim for breach of fiduciary duty rather than as a breach of contract.

Third, ownership of property in a trust differs from ownership of property in a contract. "One of the major distinguishing characteristics of a trust is divided ownership of property, the trustee usually having legal title and the beneficiary having equitable title." *Id.* This stands in contrast to the law of contracts, where "this element of division of property interest is entirely lacking." *Id.* Additionally, "[t]he rights and duties of parties to a contract generally may be freely transferred. A trustee, on the other hand, cannot assign the trusteeship or delegate the performance of fiduciary duties except as permitted by statute." *Id.*[1]

When the language of a statute is unambiguous, we are bound by its plain meaning. *Conyers*, 273 Va. at 104. The VUAA does not apply to all arbitration clauses. It applies to "a

---

[1] An additional obstacle to the formation of a contract here is that the settlor died before Boyle undertook any obligation to serve as trustee. "An offeree's power of acceptance is terminated when the offeree or offeror dies or is deprived of legal capacity to enter into the proposed contract." Restatement (Second) of Contracts § 48 (1981). Strother initially served as trustee. Boyle assumed her duties as trustee after Strother's death.

provision in a written contract." Code § 8.01-581.01. We conclude for all these reasons that a trust is not a "contract."

B.      A trust is not an "agreement" that can be enforced against a beneficiary.

The VUAA also requires arbitration for "[a] written agreement to submit any existing controversy to arbitration." Code § 8.01-581.01. An "agreement" is "[a] mutual understanding between two or more persons about their relative rights and duties regarding past or future performances; a manifestation of mutual assent by two or more persons." Black's Law Dictionary 84 (11th ed. 2019). Assuming without deciding that a *trustee's* obligations might constitute an "agreement" under the VUAA, the *beneficiary* of a trust is not a party to a "written agreement to submit any existing controversy to arbitration agreement." If the beneficiary has not agreed to submit the case to arbitration, there is no "agreement" and the VUAA does not compel arbitration for a suit brought by the beneficiary of the trust.

II.     THE FAA DOES NOT COMPEL ARBITRATION OF A TRUST PROVISION.

Boyle also relies on the FAA. The Act's core provision, section 2, provides as follows:

> A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, . . . or an agreement in writing to submit to arbitration an existing controversy . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. Section 2 makes arbitration clauses enforceable as a matter of federal law if three conditions are met. First, there must be a "contract." Second, within this "contract" must be an arbitration clause ("[a] written provision . . . to settle by arbitration a controversy") that does not violate contract law ("grounds . . . for the revocation of any contract"). Third, the arbitration clause must be part of "a transaction involving commerce."

6

The United States Supreme Court has not addressed the question before us, i.e., whether an arbitration clause in a trust is enforceable under the FAA. We perceive nothing in that Court's precedent–and we acknowledge that the Court has given the FAA a very broad reading–that compels us to depart from the statute's plain language to reach a conclusion that the FAA applies to an arbitration clause in a trust. The FAA by its plain terms applies to contracts.[2] A trust is not a contract. In the absence of contrary binding precedent, and under a straightforward textual interpretation of this statute, we conclude that the FAA does not apply to the arbitration clause at issue here.

## CONCLUSION

We conclude that a trust is neither a contract nor an agreement that can be enforced against a beneficiary, and consequently, neither the VUAA nor the FAA compel arbitration. Whether an arbitration clause in a trust can be enforced on some basis other than the VUAA or

---

[2] As we observed most recently construing the FAA in *NC Financial Solutions of Utah, LLC v. Commonwealth ex rel. Herring*, 299 Va. 452, 459-60 (2021):

> The FAA . . . does not purport "to alter background principles of state contract law regarding the scope of agreements (including the question of who is bound by them)." *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630 (2009). Therefore, we rely on the general "law of contracts" in order to determine whether a "valid and enforceable agreement to arbitrate" exists between the parties in any given case. *Mission Residential, LLC v. Triple Net Properties, LLC*, 275 Va. 157, 160 (2008).

> As a general principle, "[a] party cannot be compelled to submit to arbitration unless [it] has first agreed to arbitrate." *Id.* at 161 (quoting *Doyle & Russell, Inc. v. Roanoke Hosp. Ass'n*, 213 Va. 489, 494 (1973)). "Arbitration under the [FAA] is a matter of consent, not coercion." [*EEOC v.*] *Waffle House*, 534 U.S. [279, 294 (2002)] (quoting *Volt Info. Scis., Inc. v. Board of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989)) . . . "The FAA directs courts to place arbitration agreements on equal footing with other contracts, but it 'does not require parties to arbitrate when they have not agreed to do so.'" *Id.* at 293.

the FAA is not a question before us, and we express no opinion on the point.  We will affirm the

decision of the circuit court and remand the matter for further proceedings.

*Affirmed and remanded.*